### HOUSTON HUDSON v. STATE.

No. 138.   Opinion Filed March 30, 1909.

(101 Pac. 275.)

1.   **INTOXICATING LIQUORS— Interstate Commerce — Conveyance to Home.** Under subdivision 3, sec. 8, art. 1, of the Constitution of the United States, a resident of this state has a right to order and receive a shipment of intoxicating liquor by interstate commerce from another state, and convey the same from the railroad station in the original package to his home.

2.   **SAME.** An interstate shipment of intoxicating liquor into the state, imported for the personal use of the consignee and his family, is protected, under the interstate commerce clause of the Constitution of the United States, from seizure until such shipment reaches the home of the consignee by continuous conveyance.

3.   **SAME—Instructions.** It was error for the court below to instruct the jury that, at the time of the trial below, if the accused when arrested had in his possession, for the purpose of transporting from one place in this state to another, intoxicating liquors, said transporting was unlawful, unless the jury found from the evidence that said liquors were lawfully purchased within the state, and that under the law a lawful purchase could be made only upon the sworn statement of the purchaser, setting forth the purpose for which the liquors are to be used, and such sworn statement to be accompanied by a **bona fide** prescription, signed by a regular practicing physician, for the reason that, at the time said instructions were given, there was no law in this state to support it.

4.   **SAME—"Upon Arrival" in State.** The expression "upon arrival in such state," as used in Act Cong. Aug. 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177), providing that liquors transported into any state shall, upon arrival in such state, be subject to the operation of the laws of such state to the same extent as though they had been produced in such state, means neither on entrance within the borders of the state, nor on delivery to the consignee, but on reaching its destination.

(Syllabus by the Court.)

*Error from Love County Court; G. H. Montgomery, Judge.*

Houston Hudson was convicted of unlawfully transporting liquor from one place in the state to another place therein, and he brings error. Reversed and remanded.

The plaintiff in error, who will be herein referred to as the accused, was prosecuted in Love county, in this state, upon complaint of the county attorney of said county, charging him with unlawfully transporting intoxicating liquor from one place within the said state of Oklahoma to another place therein, and was, on the 12th day of February, 1908, convicted and sentenced to pay a fine of $50, and to serve 30 days in the county jail of said county. This case was tried on an agreed statement of facts, which is as follows:

"It is agreed that the defendant left his home near Eastman on the 23d day of December, 1907, for Gainesville, Tex., and, before he left his father gave him money with which to purchase three quarts of whiskey his brother, money with which to purchase two, and two of his neighbors, money with which to purchase three quarts each, and that he came to the town of Marietta, left his team in the wagon yard, took the train for Gainesville, and purchased this whisky, including three quarts for himself, making 14 quarts in all. He had the whisky done up in two packages, but the train was late that night, and he got off the train at Marietta about 3 o'clock in the morning, with the two packages of whisky containing 14 quarts, and was arrested as he left the depot at Marietta, and that he had gotten about 200 feet going in the direction of the wagon yard, and that he intended to get his wagon that night, and go to his home near Eastman."

The accused requested the court below to instruct the jury as follows:

"First. You are charged in this case that the state has failed to make a case against the defendant, as charged in the complaint; and you will therefore return a verdict of not guilty. Second. You are charged that, under the law, the defendant had the right to go to the state of Texas and purchase the liquor in controversy, and, having so purchased it, he had the right to transport or convey the same into the state of Oklahoma, and to his place of destination, provided his journey from the state of Texas to his home or place of destination in the state of Oklahoma was a continuous journey; and, if you find from the testimony that his purchase of whisky was made in the state of Texas, and he was transporting the same from the state of Texas to within the state of Oklahoma,

and he was still on a continuous journey from the state of Texas to the place of his destination when arrested, it would be your duty to return a verdict of not guilty."

These instructions were refused, to which the accused at the time duly excepted, and also excepted to the whole charge as given by the court in said case. The court instructed the jury as follows:

"You are further instructed that, if you believe from the evidence that the defendant, Houston Hudson, when arrested had in his possession, for the purpose of transporting from one place in the state to another, intoxicating liquors, said possession and said transporting were unlawful, unless you further find from the evidence that said liquors were lawfully purchased, as a lawful purchase is hereinafter defined. You are instructed that under the law a lawful purchase can be made only upon the sworn statement of the purchaser, setting forth the purpose for which the liquors are to be used, such statement to be accompanied by a *bona fide* prescription, signed by a regular practicing physician. If you find from the evidence in this case that the defendant, Houston Hudson, had in his possession, at the time of his arrest, any intoxicating liquors, and if you further find from the evidence that the said defendant was then and there in the act of transporting or conveying such liquors from one place in this state to another place therein, you will find the defendant guilty, unless you further find from the evidence that said liquor was lawfully purchased within this state, as a lawful purchase is above defined, or unless you find that such liquor constituted an interstate contract under the interstate commerce law, in either of which events you will find the defendant not guilty."

The accused, in due time, filed his motion asking for a new trial in the court below, for the following reasons: Because the verdict was contrary to the evidence, contrary to law, and contrary to both the law and the evidence; and because the court erred in not giving, at the close of the testimony, the instructions asked for by the accused; and because the court erred in its charge to the jury. This motion was overruled, to which the accused at the time duly excepted. From the overruling of said motion for a new trial, and the judgment upon the verdict, the accused prosecutes his appeal to this court. Briefs on both sides were filed.

The brief of the counsel for the state, being exhaustive and highly instructive, deserves the commendation of this court.

*Cruce, Cruce & Bleakmore,* for plaintiff in error.—

*Bermuda's Claimants v. U. S.,* 70 U. S. 514; *Rhodes v. Iowa,* 170 U. S. 412.

*Fred S. Caldwell,* for the state.—

*Rhodes v. Iowa,* 170 U. S. 412; *Heyman v. Ry* (U. S.) 51 L. Ed. 178; *Vance v. Vandercook,* 170 U. S. 438; *American Express Co. v. Iowa,* 196 U. S. 133; *Foppiano v. Speed,* 199 U. S. 501; *Delamaer v. Dak.* (U. S.) 51 L. Ed. 724; *Pabst Brew. Co. v. Crenshaw,* 198 U. S. 17; *Nutting v. Mass.,* 183 U. S. 553; *Mugler v. Kansas* (U. S.) 431 L. Ed. 205.

BAKER, JUDGE. (after stating the facts as above). The petition in error alleges: (1) The court erred in refusing to charge the jury to return a verdict for the defendant upon the agreed statement of facts; (2) the court erred in refusing to give to the jury requested charge asked for by the defendant; (3) the court erred in its general charge; (4) the court erred in neglecting and refusing to charge the jury what it took to constitute an interstate contract; and (5) the court erred in overruling defendant's motion for a new trial.

Now it is insisted by the accused that that portion of the prohibition ordinance which provides that "any person, * * * who shall ship, or in any other way convey such liquors from one place within this state to another place therein, except the conveyance of a lawful purchase as herein authorized, shall be punished * * * by a fine of not less than fifty dollars and by imprisonment for not less than thirty days for each offense" is repugnant to, and incompatible with, the third clause of section 8, art. 1, of the Constitution of the United States, commonly known and referred to as the Interstate Commerce Clause of the Constitution, by which clause power is delegated to the Congress of the United States to regulate commerce with foreign nations, and among the several states of the United States, and with the

Indian tribes within the United States; that under the provisions of said section of said prohibition ordinance just quoted it is attempted to prevent all persons from shipping, or conveying in any manner, intoxicating liquors from one place within this state to another place therein, except such liquors purchased in the regular and legal way from the state agency. On the other hand, the defendant in error contends that that portion of the act of Congress approved August 8, 1890, entitled "An act to limit the effect of the regulations of commerce between the several states, and with foreign countries in certain cases," otherwise known as the Wilson Act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]), permits the adoption and enforcement of said provision contained in the prohibition ordinance. The Wilson Act reads as follows:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

The so-called "Billups Prohibitioin Enforcement Bill" was not in force at the time of the commission of the offense charged in the complaint in this case; said bill being approved March 24, 1908. Laws 1908, p. 594, c. 69. The date of the crime fixed in the complaint in this case is December 23, 1907. Hence the Billups Law has no application to the case at bar; and this case is therefore to be considered in the light of the provisions of the prohibition ordinance of the Constitution of this state, the Wilson Act, above quoted, and the adjudicated cases. This brings us directly to the consideration of the construction of that portion of the state Constitution or prohibition ordinance hereinabove quoted.

We have read and considered all the cases in point and having any bearing thereon. We find the case of *Vance v. Vandercook*

*Company,* 170 U. S. 452, 18 Sup. Ct. 674, 42 L. Ed. 1100, very important. The court, after discussing the facts in that case, said in substance, that: A bill in equity was filed by Vance against W. A. Vandercook Co., averring that said company was the owner of large vineyards in the state of California, from which it produced wines, brandies, and other liquors, and through a traveling salesman, a resident of the state of Virginia, it took orders from the residents of the state of South Carolina to deliver to them, within said state of South Carolina, products of said vineyards, and had so taken orders, and had shipped 71 original packages to the city of Charleston, in said state of South Carolina, by continuous interstate carriage; that under the dispensary law of said last named state the officers of said state had seized said packages, and prevented the delivery thereof, openly avowing their intention to continue to prevent such delivery, and the delivery of all other liquor shipped into the state of South Carolina in violation of the law of the state. The bill further alleges that said company intends, in the course of its business, to make additional shipments of liquor, ordered by its customers in advance, and to ship the same from San Francisco, Cal., to its agent in South Carolina, and to store and warehouse the same in the state of South Carolina for the lawful use and consumption of the residents and citizens of said state, and that in such shipments and sale said company was exercising a lawful intercourse, trade, and commerce with the citizens and residents of the state of South Carolina, under the Constitution and laws of the United States; that such shipments were seized by the defendant, Vance, and others claiming to act as state constables; that such seizures were to the manifest wrong, damage, and injury to said company and its trade, averring, also, that the state law upon which the officers relied in the seizure of said liquors was void, because it was repugnant to the Constitution of the United States; and that, to prevent the continuing wrong which would necessarily arise from the conduct of the state officers, and to avoid a multiplicity of suits, a writ of injunction was necessary to restrain said officers

of said state from interfering with said company in shipping its said products from the state of California to the state of South Carolina, to its agents there, for the purpose of selling the same. A restraining order was granted, as prayed for, which was perpetuated, and a final decree was entered in favor of said company, in accordance with the prayer of the bill. The syllabus in said case reads as follows:

"(1) That the respective states have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the lawmaking power of the states, provided, always, they do not transcend the limits of state authority by invading rights which are secured by the Constitution of the United States, and provided further that the regulations as adopted do not 'operate a discrimination against the rights of residents or citizens of other states of the Union; (2) that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes with or hampers the same, is in conflict with the Constitution of the United States; (3) that the power to ship merchandise from one state into another carries with it as an incident the right in the receiver of the goods to sell them in the original packages, any state regulation to the contrary notwithstanding—that is to say, that the goods received by interstate commerce remain under the shelter of the interstate commerce clause of the Constitution until by a sale in the original package they have been commingled with the general mass of property in the state—but, since the passage of Act Aug. 8, 1890, c. 728, 26 Stat. 313, which provides 'that all fermented, distilled or other intoxicating liquors or liquids transported into any state or territory or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' while the receiver of intoxicating liquors in one state, sent from another state, has the constitu-

tional right to receive them for his own use, without regard to the state laws to the contrary, he can no longer assert a right to sell them in the original packages in defiance of state law."

Mr. Justice White, in delivering the opinion of the court in said case, said:

"But the right of persons in one state to ship liquor into another state to a resident for his own use is derived from the Constitution of the United States, and does not rest on a grant of the state law. Either the conditions attached by the state law unlawfully restrain the right, or they do not. If they do—and we shall hereafter examine this contention—then they are void. If they do not, then there is no lawful ground of complaint on the subject. We are thus brought to examine whether the regulations, imposed by the state law on the right of the residents of other states to ship into the state of South Carolina alcoholic liquor to the residents of the state when ordered by them for their use, are so onerous and burdensome in their nature as to substantially impair the right; that is, whether they so hamper and restrict the exercise of the right as to materially interfere with or, in effect, prevent its enjoyment."

The same high court, in the case just cited, also held:

"That the goods received by interstate commerce remained under the shelter of the interstate clause of the Constitution until by sale in the original package they may have commingled with the general mass of property in the state. * * *"

It will be observed that the prohibition requirements of the Enabling Act entirely omit the question of interstate shipments or conveyances, and were, in all probability, drawn so as not to be repugnant to, and inconsistent with, the interstate commerce clause of the federal Constitution. If the prohibition ordinance of the Constitution of this state did, in so many words, forbid the shipment of liquors from out of the state to residents in the state for their own use and consumption, such a provision would be repugnant to the Constitution of the United States, as also distinctly decided in the case of *Scott v. McDonald*, 165 U. S. 66, 17 Sup. Ct. 265, 41 L. Ed. 632. In the last case the plaintiff sought to recover damages, caused by the action of the defendants, who were state constables of the state of South Carolina, in seizing and tak-

ing possession of several packages of wines and liquors belonging to the plaintiff, and at the time of the seizure were in the possession of the railroad company, which, as a common carrier, had brought the packages within the state of South Carolina. Mr. Justice Shiras, who delivered the opinion of the court, said in part:

"The evils attending the vice of intemperance in the use of spirituous liquors are so great that a natural reluctance is felt in appearing to interfere, even on constitutional grounds, with any law whose avowed purpose is to restrict or prevent the mischief. So long, however, as state legislation continues to recognize wines, beer, and spirituous liquors as articles of lawful consumption and commerce, so long must continue the duty of the federal courts to afford to such use and commerce the same measure of protection under the Constitution and laws of the United States, as is given to other articles. We cheerfully concede that the law in question was passed in the *bona fide* exercise of the police power. We disclaim any imputation to the lawmakers of South Carolina of a design, under the guise of a domestic regulation, to interfere with the rights and privileges of either her own citizens, or those of her sister states, which are secured to them by the Constitution and laws of the United States. But, as we have had more than one occasion to observe, our willingness to believe that this statute was enacted in good faith, and to protect the people of the state from the evils of unrestricted importation, manufacture, and sale of ardent spirits, cannot control the final determination whether the statute, in some of its provisions, is not repugnant to the Constitution of the United States. As was said in *Mugler v. Kansas,* 123 U. S. 661, 8 Sup. Ct. 273, 31 L. Ed. 210, 'if a statute, purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.'"

After reviewing many decisions, the learned justice says further:

"In the light of these cases the act of South Carolina of January 2, 1895, must, as to those of its provisions which affect the plaintiff in the present suit, stand condemned. It is not an inspection law. The prohibition of the importation of the wines

and liquors of other states by citizens of South Carolina for their own use is made absolute, and does not depend on the purity or impurity of the articles. Only the state functionaries are permitted to import into the state and thus those citizens who wish to use foreign wines and liquors are deprived of the exercise of their own judgment and taste in the selection of commodities. To empower a state chemist to pass upon what the law calls the 'alcoholic purity' of such importations by chemical analysis can scarcely come within any definition of a reasonable inspection law. It is not a law purporting to forbid the importation, manufacture, sale, and use of intoxicating liquors as articles detrimental to the welfare of the state and to the health of the inhabitants, and hence it is not within the scope and operation of the act of Congress of August 8, 1890. That law was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce. When that law provided that 'all fermented, distilled, or intoxicating liquors transported into any state or territory, remaining therein for use, consumption, sale, or storage therein, should, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the state cannot, under the congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

Another case which is of great importance in this case and which is directly in point, is the case of *In re Langford,* found in 57 Fed. (C. C.). Commencing at page 572, Judge Simonton, discussing what is meant by the term "upon its arrival," says:

"The respondent insists that by this term is meant its entrance within the borders of the state. Thus it is the prohibition of the importation of intoxicating liquors into this state. That does not seem to be within the scope of the Wilson Act. It provides 'for all fermented, distilled or other intoxicating liquors or liquids transported into any state'; and declares them not exempt from the operation of the police laws by reason of being introduced therein in original packages or otherwise. It is clear that the Wilson Act deals with liquors after their introduction within the state and therefore the word 'arrival' cannot be construed to be at the border of the state. Goods 'arrive' when they reach their destination. In the term is involved a cessation of the transit. Goods shipped from Virginia to Alabama cannot be said to arrive in North Carolina, South Carolina, or Georgia. They 'arrive' when they reach their destination in Alabama."

In the second syllabus of this case the court defines the meaning of "upon arrival" as follows:

"The expression 'upon arrival in such state' means neither on entrance within the border of the state, nor on delivery to the consignee, but on reaching its destination."

Attention is also called to the following authorities: *Leisy v. Hardin,* 139 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128; *Rhodes v. State of Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; *Re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572; *Heymann v. Southern Ry. Co.,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, and cases therein cited.

From the agreed statement of facts in this case it clearly appears that the accused, on the 23d day of December, 1907, resided in the state of Oklahoma; that on said date he went to Gainsville, Tex., and there purchased 14 quarts of intoxicating liquor, namely whisky; that said purchases were made for his father, his brother, two of his neighbors, and for himself, and were being conveyed by him in two packages; that his place of residence was Eastman, in this state; that he left the train upon which he conveyed the said whisky from Gainsville, Tex., to this state at Marietta, and was intending to take the whisky by wagon to his home, near Eastman; and that, when he had gotten off of said train at Marietta, and had

gone about 200 feet with said whisky in his possession, he was arrested, tried, and found guilty on the charge of conveying whisky from one place within the state to another place therein. The principal question therefore is, Was the purchase an interstate contract, and had the delivery been made in pursuance of such interstate contract? If so, the accused was properly convicted. If not, then no offense was committed.

It is the opinion of this court that the purchase of said whisky was an interstate contract, and was entitled to the sheltering influence and protection of the interstate commerce clause of the Constitution of the United States until said whisky was in fact delivered at the home of accused, near Eastman, in this state. This view is sustained by this court in an opinion written by Associate Judge Doyle, in the case of *Webb High, Curley Bradley, Harry Whittemore, and George Broughton v. State of Oklahoma* (decided at this term of court,) *ante,* p. 161, 101 Pac. 115, which decision is referred to and approved. The question involved in this case was also passed upon by the Supreme Court of the state in the case of *Wm. Schwedes v. State of Oklahoma,* 1 Okla. Cr. 245, 99 Pac. 804, in which said court held as follows:

"Under subdivision 3, § 8, art. 1, of the Constitution of the United States commonly referred to as the 'interstate commerce clause' of the Constitution, a resident of one state has the right to have shipped to him from another state alcoholic liquors, when ordered by him for his and his family's use, and to keep the same for such use, and the state cannot under its police power enact laws so as to substantially hamper or burden such constitutional right to have such shipment made, and to receive and retain the same, for personal use."

Inasmuch as the journey of the accused from Gainsville, Tex., to his home or place of destination within this state was a continuous journey, and had not been completed at the time of his arrest and the seizure of the liquor in question, the court below erred in not giving the jury in charge the instructions requested by the accused, and said court also erred in instructing the jury that under the law a lawful purchase of intoxicating liquor could then be

made only upon the sworn statement of the purchaser, setting forth the purpose for which the liquors are to be used, such statement to be accompanied by a *bona fide* prescription signed by a regular practicing physician.   It is evident the court below, in instructing the jury in this case had in mind the provisions of the Billups Bill, which was then pending in the Legislature, but had not become a law.   The charge as given was manifestly erroneous, because, as we said before, the so-called "Billups Prohibition Enforcement Law" was not in force, either at the time of the commission of the alleged offense charged in the complaint in this case, or at the time the trial took place in the court below, and was manifestly prejudicial to the substantial rights of the accused.

Inasmuch as this case must be reversed for the reasons stated, we do not pass upon, and especially reserve, the following questions:

(1)   Whether the whisky levied upon might be seized after delivery on the charge that it had not been *bona fide* brought in the state, and whether or not said whisky was intended for personal use of the persons for whom the same was brought. .

. (2) Although such goods may be brought into this state for the personal use of the consignee or his family, but not for the purpose of sale, which is prohibited under the law of this state, can such consignee be prevented from receiving and transmitting same to his home, place of business, or storage house?

For the reasons above stated, the judgment of the court below is reversed, and the case is remanded to the county court of Love county for new trial.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.