EUGENE TITSWORTH V. STATE.

No. A-57.    Opinion Filed April 17, 1909.

(101 Pac. 288.)

1.    INTOXICATING LIQUORS—Right to Keep at Place of Business. This court appreciates the frankness of Hon. Fred S. Caldwell, enforcement attorney, and indorses as correct the following statement contained in his brief, and adopts it as a part of the syllabus of this case: "It is not **per se** unlawful under that statute for a person engaged in any other business than the drug business to keep or use, in or about his place of business, intoxicating liquors. That is to say, in the case of a groceryman, hardware merchant, dry goods merchant, or any other than the drug business, the keeping of intoxicating liquor in or about the place of business would not constitute a crime, unless accompanied with the intent of the possessor to use or dispose of the same in violation of some one or more of the provisions of the enforcing act."

2.    SAME—Possession by Pharmacists. Section 8, art. 2, of the enforcement act (Laws 1907-08, p. 600, c. 69), is applicable alone

to those apothecaries or pharmacists who have complied, or attempted compliance, with the provision therein contained. Other pharmacists or apothecaries who have not complied, or attempted compliance, with the conditions of said section are not subject to the penalties therein prescribed.

3. **INDICTMENT AND INFORMATION — Intoxicating Liquors — Language of Statute.** An information or indictment which attempts to charge a violation of section 8, art. 2, of the enforcement act (Laws 1907-08, p. 600, c. 69), must allege the offense in the language, or use substantially the language, of the section, and must allege a compliance with the conditions of said section 8. If it fails to do this, it will not charge a public offense.

4. **CONSTITUTIONAL LAW—"Law of the Land."** The term "law of the land" includes the law of the state, the Constitution of the state, and the Constitution of the United States.

5. **COMMERCE—"Regulate."** The word "regulate," as used in the commerce clause of the federal Constitution, means to control.

(Syllabus by the Court.)

## Appeal from Muskogee County Court.

Eugene Titsworth was convicted of a violation of the liquor law, and appeals. Reversed.

On the 27th of June, 1908, the county attorney of Muskogee county filed in the county court of said county the following information against the appellant, Eugene Titsworth, who will here-inafter be called the defendant:

"In the County Court of Muskogee County, Okla. State of Oklahoma v. Eugene Titsworth, Defendant. In the Name and by the Authority of the State of Oklahoma; Now comes W. J. Crump, the duly qualified and acting county attorney in and for Muskogee county, state of Oklahoma, and gives the county court of Muskogee county, state of Oklahoma, to know and be informed that Eugene Titsworth, did, in Muskogee county, and in the state of Oklahoma, on or about the 26th day of June in the year of our Lord one thousand nine hundred and eight, and anterior to the presentment hereof, commit the crime of having and keeping, in and about his place of business and apothecary, intoxicating liquors, said liquors not being a lawful purchase, in the manner and form as follows, to wit: That the said Eugene Titsworth, a retail apothecary, in the county of Muskogee, state of Oklahoma, on the 26th day of June, 1908, did knowingly, wil-

fully, and unlawfully have and keep in and about his place of business and apothecary intoxicating liquors, said liquors not being a lawful purchase from the state agency and local agency, Muskogee county, state of Oklahoma, or superintendent, contrary to the form of the statutes, in such cases made and provided, and against the peace and dignity of the state."

On the 21st day of September the defendant filed the following demurrer to the information:

"In the County Court of Muskogee County, State of Oklahoma. State of Oklahoma v. Eugene Titsworth, Defendant. No. 124. Comes the defendant, Eugene Titsworth, and demurs to the information herein, for the following reason, to wit: Because said information does not state facts sufficient to constitute a public offense against this defendant. Wherefore defendant prays that he may be discharged hence with his costs. S. M. Rutherford, Attorney for Defendant."

This demurrer was by the court overruled, to which action of the court the defendant reserved an exception. Upon the trial of the case the jury found the defendant guilty as charged in the information, and assessed his punishment at imprisonment for 30 days, and a fine of $250. The defendant filed a motion in arrest of judgment, upon the ground that the information did not state facts sufficient to constitute a crime under the law. This motion was overruled by the court, and the defendant reserved an exception. The case is regularly before this court upon appeal.

*S. M. Rutherford,* for appellant.—On question of sufficiency of information: *State v. Hesher,* 46 Kan. 534; *State v. Neil,* 4 Kan. App.; 45 Pac. 623; *State v. R. R. Co.,* 54 Ark. 546; *Warren v. State,* 54 Ark. 660.

*Fred S. Caldwell,* for the State.

FURMAN, PRESIDING JUDGE. (after stating the facts as above). The controlling question in this case is as to whether it is *per se* unlawful for an apothecary or pharmacist to have and keep, in and about his place of business, as such apothecary or pharmacist, intoxicating liquors, without the intention to dispose of them in violation of the provisions of the enforcement act,

which liquors were not acquired by lawful purchase from the state agency or the local agency, without having first executed a bond, approved by the superintendent of the state agency, conditioned as provided in section 8, art. 2, of the enforcement act (Laws 1907-08, p. 600, c. 69), which section is as follows:

"Sec. 8. Each apothecary or pharmacist doing business in this state, before acquiring, keeping, or using in or about his said pharmacy or apothecary any liquors the sale of which is prohibited by this act shall execute a bond in the sum of not less than one thousand ($1,000.00) dollars, to be approved by the superintendent conditioned that none of said liquors shall be used or disposed of for any purpose other than in compounding or preserving medicines the sale of which would not subject him to the payment of the special tax required of liquor dealers by the United States, and that he will not violate any of the provisions of this act. Said bond shall be recorded in the office of the superintendent, and the original thereof deposited with the Secretary of State. It shall be unlawful for any retail apothecary or pharmacist to have in or about his said apothecary or pharmacy more than eight gallons of alcohol and five gallons of other liquors at any one time, or to use or keep in or about his apothecary or pharmacy any such liquors for any purpose whatsoever except such liquors as shall have been furnished by the superintendent under the provisions of this act. Any person who shall violate the provisions of this section shall be guilty of a misdemeanor, and in addition thereto shall be liable to penalty of not less than fifty ($50.00) dollars, nor more than five hundred ($500.00) dollars for each offense. It shall be the duty of the county attorney to bring suit on any bond executed by such persons for the recovery of any such penalty." (Sess. Laws 1907-08, p. 594, c. 69.)

Whatever the personal views of the members of this court may be upon this question, it must be remembered that it is our sworn duty to decide this, as well as all other questions, according to the law as it is, whether we like the law or not. The judge who would attempt to defeat or misconstrue the law of the land simply because he did not personally approve it, or who, Pontius Pilate-like, would attempt to keep his fingers upon the public pulse, and allow public clamor to cause him to swerve one iota from a correct declaration of the law, is utterly unworthy of

the confidence and respect of right-thinking people, and establishes precedents which will result in the subversion of our institutions, and the ultimate defeat and destruction of justice itself. The true judge maintains the integrity of his character, and enforces the law as it is, without regard to his personal feelings, or any consequences which may ensue to himself, let his conduct please or displease whomsoever it may. If he does not do this, he is a coward, a perjurer, and a traitor, a disgrace to the position which he occupies, a curse to the people among whom he lives, and should receive the contempt of all honest people. It should also be remembered that the law of the land not only means the law of our own state, but also includes the Constitution of our state, and above all the Constitution of the United States, Section 2 of our own Constitution is as follows:

"Sec. 2. Constitution of United States Supreme. Section 1. The state of Oklahoma is an inseparable part of the federal Union, and the Constitution of the United States is the supreme law of the land." (Const. art. 1, § 1 [Bunn's Ed. § 2]).

Article 6 of the Constitution of the United States contains the following:

"This Constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding."

The Constitution of the United States declares that Congress shall have power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." To "regulate" means to control. So it is seen that the power of regulating or controlling commerce between the states is vested exclusively in Congress, and that no state has the power to pass any law upon this subject, or which would in any manner interfere with or abridge the right of one of its citizens to purchase in another state any article of commerce which could be lawfully sold in the state where the purchase is made, and bring it to his home in

his own state for his personal use. This has been decided so often that no person who is well informed upon this subject will question the rule above stated. This matter has been passed upon by the Supreme Court of Oklahoma in *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804, and by the Criminal Court of Appeals in the cases of *Houston Hudson v. State, ante,* p. 176, 101 Pac. 275; *Webb High v. State, ante,* p. 161, 101 Pac. 115,; and *Josh Mc-Cord v. State, ante* p. 214, 101 Pac. 280. The cases above referred to contain such a thorough discussion of this matter, and quote from such an overwhelming weight of authorities, that it is not necessary to repeat what will be found in them. If we are in error touching this matter, it will be an easy thing for the enforcement officer of this state to make a test case in a civil proceeding, and carry it to the Supreme Court of the United States for final determination. If that tribunal sees fit to reverse its former decisions, we will be bound by such action, and cheerfully follow it. But, until this is done, we feel constrained to adhere to the decisions as they stand now.

If the decisions of the Supreme Court of the United States are wrong, application should, and can, be made to that court for a reversal of these decisions. It is a waste of time, money, and labor to appeal to this court to set aside anything which that court has decided. The Supreme Court of the United States, of necessity, must be the final judge of the construction of the United States Constitution. Otherwise we would have a hydro-headed judicial system in which 47 independent appellate courts could construe this instrument as they pleased, which would result, not only in confusion, but in civil war. Each tribunal would be supported by the military force of the government which it represented. This would result in death and destruction to our form of government. Certainly no reasonable person desires this court to adopt a policy which would bring about such serious consequences as this. It would be treason itself. One thing can be depended upon, and that is, that this court will not make any

2 Cr.—18

such insane attempt. Under the Constitution of the United States, and the decisions of the Supreme Court of the United States, it is clear that any resident of Oklahoma can purchase intoxicating liquors in another state, and ship them into this state, and to points of destination, for his own personal use, and that such shipments constitute interstate commerce, and that any state law to the contrary is void. But these shipments lose their character as interstate commerce as soon as they reach the point of their destination, and any further shipment of such liquors is subject to state control. The exact language of the Supreme Court of the United States is as follows:

"Equally established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States. * * * But the right of persons in one state to ship liquor into another state to his residence for his own use is derived from the Constitution of the United States, and does not rest on the state law. Either the conditions attached by the state law unlawfully restrain the right, or they do not. If they do, then they are void."

And again, the court, speaking of the right of every citizen of a state to purchase and have shipped to him liquors for his own use, says:

"But the right arises from the Constitution of the United States; it exists wholly independent of the will of either the law-making or executive power of the state; it takes its origin out of the state of South Carolina, and finds its support in the Constitution of the United States. Whether or not it can be exercised depends solely upon the will of the person making the shipment, and cannot be, in advance, controlled or limited by the action of the state in any department of its government." (*Vance v. Vandercook,* 170 U. S. 439, 18 Sup. Ct. 674, 42 L. Ed. 1100.)

If a resident of this state may lawfully purchase intoxicating liquors in another state, and ship them to his place of business or home, for his own use, upon what ground can the claim be made

that he cannot keep such liquors at his home or place of business, provided that he does so exclusively for his own use? Is it not true that the grant of power to do a certain thing includes and carries with it the right to do all things which are necessary to the full exercise and enjoyment of the power expressly granted? There can be but one logical answer to this question. If a person can lawfully bring intoxicating liquors to his home or place of business, so long as he does not attempt or intend to use such liquors except for his own use, he has the right to keep them there. There is no logical escape from the conclusion that, if a resident of this state has the constitutional right to ship into the state intoxicating liquors for his own use, he has the same right to receive, keep, and use such liquors for the purpose for which they were shipped. This is the law whether this court likes it or not. To deny this proposition is to assume the position that the state may do indirectly that which it is expressly forbidden by the Constitution of the United States from doing directly. Herein lies the principal obstacle to the complete enforcement of the prohibition of the sale of intoxicating liquors by the states. But the states are powerless to remedy this evil. Relief can only come through congressional action.

Having sworn to support the Constitution of the United States and the acts of Congress in pursuance thereof, we are compelled to do so, it matters not how much we would like to see the law otherwise. It is our duty to uphold, support, and defend the Constitution of the United States, both in its letter and in its spirit. Counsel who represented the state in this case, Hon. Fred S. Caldwell, recognizes the force of these views, and in his brief for the state says:

"It is not *per se* unlawful under that statute for a person engaged in any other business than the drug business to keep or use, in or about his place of business, intoxicating liquors. That is to say, in the case of a groceryman, hardware merchant, dry goods merchant, or any other than the drug business, the keeping of intoxicating liquor in or about the place of business would not constitute a crime, unless accompanied with the intent of the pos-

sessor to use or dispose of the same in violation of some one or more of the provisions of the enforcing act."

But counsel for the prosecution contends that a special exception should be, and is, made in the enforcement act as to all druggists or pharmacists. If this contention is correct, then it would seriously involve the constitutionality of the enforcement act. Const. art. 5, § 59 (Bunn's Ed. § 132), is as follows:

"Sec. 132. General Laws to Have Uniform Operation. Sec. 59. Laws of a general nature shall have a uniform operation throughout the state, and where a general law can be made applicable, no special law shall be enacted."

The fourteenth amendment to the Constitution of the United States (§ 1) is as follows:

"Sec. 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

But we do not deem it necessary to discuss and decide this question in this case, for under our view the enforcement act is not obnoxious to either of these constitutional provisions. Section 1, art. 3, of the enforcement act, makes it "unlawful for any person, individual, or corporation * * * to have the possession of any such liquors with the intention of violating any of the provisions of this act." This is a general law, and applies to all persons alike. It includes all classes and occupations. It is, in no sense of the word, an attempt to single out any special person or class or occupation of persons. It is absolutely uniform in its operations throughout the state, and is clearly within the police power of the state. Any person, it matters not what his or her occupation may be, who has in his or her possession any intoxicating liquors in this state, except for personal use, can be lawfully prosecuted and convicted under this statute. All stand upon a perfect equality. Neither does it take from or abridge the privi-

lege of any of the citizens of the United States to have intoxicating liquors in his home or place of business for his or her personal use. Mr. Caldwell, in his brief for the state, admits that it is not unlawful for a groceryman, hardware merchant, dry goods merchant, or a person in any other occupation to keep or use intoxicating liquors, but contends that section 8, art. 2, of the enforcement act, does take from druggists or apothecaries the privilege of having in or about their places of business any intoxicating liquors, except such as are specially permitted by the provisions of said section.

Counsel for the state in his brief, as hereinbefore quoted, expressly admits that persons engaged in all other occupations have the privilege of keeping intoxicating liquors about their places of business for their own use, but seeks to make a special exception as against druggists or pharmacists. The exact language used in his brief upon this point is as follows: "But, with the retail apothecary or pharmacist it is different and he, under the provisions of said section 8, art. 2, of the act, is guilty of a crime if he does nothing more than keep intoxicating liquors in or about his place of business," except such as are permitted to be kept by the provisions of said section 8. As we understand the law, under the Constitution and decisions of the Supreme Court of the United States, druggists or pharmacists have the same right that all other citizens have to ship, as interstate commerce, such liquors from another state to their homes or places of business for their own use. Any state Constitution or law which would deny or abridge this right or privilege would be and is void.

It is the purpose for which intoxicating liquors are to be used which makes their shipment into the state lawful, as interstate commerce. If they can be lawfully shipped for the personal use of the consignee as interstate commerce to the point of destination, by what course of reasoning can it be made to appear that they cannot be lawfully received and kept at such place so long as they are used alone for the purpose for which they were

so lawfully shipped and received? To deny the right to so use is to defeat the right to so receive; to deny the right to so receive is to defeat the right to so ship. It is illogical to say that the right to ship to the depot exists, but that such shipments cannot be carried to the home or place of business of the consignee, and there kept for his personal use. It might just as well be said that the farmer has the right to ship his cotton over the railroad, but cannot carry it to the depot for shipment. There is just as much reason and justice in the latter statement as in the former. If a person cannot receive, keep, and use intoxicating liquors at his home or place of business, which have been lawfully shipped to him for his own use from another state as interstate commerce, it is folly to say that the state recognizes the right of such interstate shipments. The adoption of such a rule of construction would be to announce that a state can defy and defeat the Constitution of the United States. It would be to brand as a lie that clause in our state Constitution which declares that the Constitution of the United States is the supreme law of the land. But we do not understand that the enforcement act contemplates or is fairly susceptible of any such construction. It must be construed as an entirety, and in harmony with all of its provisions.

Section 14, art. 3 (Sess. Laws 1907-08, p. 608, c. 69), is in this language:

"Sec. 14. All places where liquors of any kind are manufactured, sold, bartered, given away, or otherwise furnished in violation of any of the provisions of this act, are hereby declared to be public nuisances and shall be abated in the manner provided by law at the suit of any citizen of the state."

This is a general provision which is applicable to all places, and operates generally on all classes and occupations in the state. But the keeping of such liquors for one's own personal use is not an offense under the enforcement act, neither could it, under the Constitution of the United States, be an offense.

Section 18, art. 3 (Sess. Laws 1907-08, p. 609, c. 69), is as follows:

"Sec. 18. It shall be unlawful for any person to whom any

liquors, the sale of which is prohibited by this act, shall be consigned whether consigned to him in his own name or in a fictitious name, to give any other person an order for any such liquors to any railroad company, express company, or other common carrier, or to any officer, agent or employe, of any railroad company, express company or common carrier, with the intent and for the purpose to enable such other person to get or receive any such liquors for himself or for any other person or persons other than the consignee. Any person violating the provisions of this section shall be guilty of a misdemeanor."

This recognizes the right of interstate shipments, but makes it an offense for the person to whom the liquors are consigned to give any other person an order for such liquors, with the intent or for the purpose of enabling such other person to get possession of such liquors for his use. There is no clause in the enforcement act which attempts to make the interstate shipments of intoxicating liquors for the personal use of the consignee unlawful. If there was, it would clearly be void as in conflict with the Constitution of the United States.

Section 19a, art. 3 (Sess. Laws 1907-08, p. 610, c. 69), of the enforcement act, is as follows:

"Sec. 19a. Any officer, agent or employe of the railroad company, express company or other common carrier, who shall knowingly carry or deliver any liquors, the sale of which is prohibited by this act, to or for any person to be sold, bartered, given away or otherwise furnished in violation of this act shall be guilty of a misdemeanor. Any such officer, agent or employe who shall knowingly deliver any such liquors to any person other than the person to whom it is consigned and without a written order in each instance of the consignee thereof, shall be guilty of a misdemeanor."

This makes it an offense for any agent, officer, or employe of a railroad company or common carrier to carry or deliver any liquor to or for any person, or persons to be sold, bartered, given away, or otherwise furnished in violation of law, or to knowingly deliver any such liquor to any other person except the consignee, without the written order in each instance of the consignee thereof. This recognizes the lawful right of railroads or other carriers to

carry and deliver to any consignee such liquors for his personal use. So it is seen that the enforcement act recognizes the right of any person to receive such shipments for his own use, and of the railroads to carry and deliver such shipments. These provisions do not attempt to exceed the powers of the state, and are strictly in accord with the Constitution and decisions of the Supreme Court of the United States. The information in this case was drawn under section 8, art. 2, of the enforcement act. This section provides the conditions under which pharmacists and druggists may obtain and use intoxicating liquors, not for their own personal use, but to be used by them in compounding medicines for sale. The decisions of the Supreme Court of the United States do not recognize shipments for this purpose as being protected as interstate commerce. Therefore this is a proper subject for state legislation, without restriction. All that is contained in this section must be construed as relating to this purpose. But, again, the latter part of section 8 provides that any druggist or pharmacist who keeps liquors about his premises, except as provided in the first part of the same, "shall be guilty of a misdemeanor, and in addition thereto shall be liable to a penalty of not less than fifty dollars or more than five hundred dollars for each offense," and then it is made "the duty of the county attorney to bring suit on any bond which may have been executed by such persons for the recovery of any such penalty."

Section 8 must be construed as a whole. Each portion must be considered in the light of the other portions, and subject to the purpose to be accomplished by the entire section. Those only could be sued upon bonds who had given bonds. Only those who desire to use intoxicating liquors to compound medicines for sale give bonds. Therefore only this class is subject to the pains and penalties of the section. The pains and penalties prescribed in section 8 are inseparable; they stand or fall together. This alone is enough to make it clear that the Legislature intended to confine section 8 and its penalties to those druggists who desired to keep and use liquors in their places of business, not for their

personal use, but to be used exclusively for compounding medicines for sale. This construction of the enforcement act harmonizes it with all of its other provisions, and frees it from even the appearance of being unconstitutional. It is not special legislation, because it confers upon all druggists, who shall comply with its provisions, the right to use intoxicating liquors in compounding medicines for sale. Having consented to, and complied with, these conditions, such persons are liable to the penalties therein provided for a violation of these conditions. To our minds it is clear that, before the defendant could be held liable under section 8, he must have voluntarily brought himself under its provisions, or must have attempted to do so. This must be alleged in the information, and proven upon the trial, before he could be legally convicted.

The Supreme Court of North Carolina correctly states the law upon this subject as follows:

"But it is undisputed law that, when a statute enacts that any one of a certain class of persons, who shall do or omit a certain act under certain circumstances, shall be guilty of a crime, the indictment must describe the person indicted as one of that class, and aver that he did or omitted the act under the circumstances which made it a crime. Every one of these things is an essential constituent of the crime." (State. v. Sloan, 67 N. C. 357).

It is not alleged in the information that the defendant intended to sell the liquor he had in his place of business, and for this reason the court erred in not sustaining the demurrer to the information, and erred again in overruling the motion in arrest of judgment. If the defendant, being a druggist, had liquor in his place of business, not for his own personal use, but with the intention of selling, giving away, bartering, or otherwise disposing of it, either by using it to compound medicines or otherwise, then he would have been liable just as any bootlegger is liable, and should have been prosecuted and convicted under section 1 of article 3.

There is evidence in the record that the defendant said, when

his place of business was raided, that others were making $10 by selling whisky where he was making $1. This in connection with the amount of whisky found in his place, would have sustained a conviction under this section. Section 8 of article 2 applies only to those druggists who have voluntarily complied, or attempted to comply, with its conditions, and these conditions are essential constituents of the crime, and must be alleged in the information or indictment, or no crime is charged.

It is the present opinion of the writer that, in cases against defendants for keeping intoxicating liquors for sale, the general reputation of such places, in the community in which they are situated, touching this point is admissible in evidence, just as it is permissible to prove a general reputation of a bawdyhouse, a gambling house, or of any place which constitutes a nuisance. Section 14, art. 3, of the enforcement act (page 608, Sess. Laws, 1907-08), expressly makes places where liquors of any kind are sold, manufactured, bartered, given away, or otherwise disposed of in violation of the law nuisances. This, however, would not be true in cases in which the defendant was charged with a specific sale of such liquors. Such evidence would only be admissible where the defendant was charged with keeping liquors for sale at a certain place.

For the reasons hereinbefore given, the judgment of conviction is reversed, with directions to the county court of Muskogee county to sustain the motion in arrest of judgment and dismiss the case.

BAKER and DOYLE. JUDGES, concur.