## FRANK ALEXANDER V. STATE.

### No. A-34.   Opinion Filed February 7, 1910.

(106 Pac. 988.)

1.  **COMMERCE — Interstate Commerce — Shipping Liquor Into State for Personal Use.** The Constitution of the United States and the decisions of the Supreme Court of the United States permits persons living in this state to ship or bring intoxicating liquor into this state for their own use, and to carry or convey such liquor to their homes or places of residence for their own use or the use of their families, and any state law or constitutional provisions which seeks to make such bringing or shipping of such liquor into this state illegal is void.

2.  **INTOXICATING LIQUORS — Offenses — Interstate Shipments.** When a defendant is charged with illegally shipping intoxicating liquors into this state, and the evidence shows that the liquor was lawfully purchased in another state for the personal use of the defendant or of his family, and that the defendant has not sold or attempted to sell such liquor or to make any other illegal use of the same, the jury should be instructed that the defendant has the legal right to so ship or convey such liquor into this state, and to convey it to his home or place of business, and that in so doing he does not commit a violation of the law.

(Syllabus by the Court.)

*Appeal from Tillman County Court; T. E. Campbell, Judge.*

Frank Alexander was convicted of conveying liquor within the state, and appeals.   Reversed and remanded for a new trial.

*P. Mounts*, for appellant.
*Fred S. Caldwell*, for the State.

FURMAN, PRESIDING JUDGE.   The undisputed facts as disclosed by the record are:  That the defendant lived at the Cordell Hotel, in the town of Frederick, Okla.   That at 2 o'clock p. m. on the 1st day of February, 1908, the defendant, being in Wichita Falls, Tex., lawfully purchased some whisky.   That he started for home on the Wichita Falls & Northwestern Railroad, bringing the whisky with him.   The defendant testified that he was carrying

the whisky to his room at the hotel in Frederick for his own use. This is not questioned by any other evidence. There is no evidence in the record that the defendant sold or offered to sell any of the whisky, or otherwise attempted to illegally dispose of it. The evidence shows that, when the defendant reached the town of Frederick, he alighted from the train, and started directly for his room at the hotel, and, after he had gone about 25 feet from the train, he was arrested with the whisky upon his person. The defense is that the defendant was lawfully in possession of the whisky, and, under the Constitution and laws of the United States having the lawful right to purchase the whisky in Texas, he had the further right to convey it to his room for his own use as an interstate shipment. It does not make the least bit of difference how the members of this court may feel or think with reference to shipments of liquor into this state as interstate commerce, it is clear to all intelligent persons that we are absolutely bound by the Constitution of the United States and the decisions of the Supreme Court of the United States.

In the case of *Titsworth v. State,* 2 Okla. Cr. 268, 101 Pac. 290, this court said:

"The Constitution of the United States declares that Congress shall have power 'to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.' [Article 1, § 8.] To 'regulate' means to control. So it is seen that the power of regulating or controlling commerce between the states is vested exclusively in Congress, and that no state has the power to pass any law upon this subject, or which would in any manner interfere with or abridge the right of one of its citizens to purchase in another state any article of commerce which could be lawfully sold in the state where the purchase is made, and bring it to his home in his own state for his personal use. This has been decided so often that no person who is well informed upon this subject will question the rule as above stated. This matter has been passed upon by the Supreme Court of Oklahoma in *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804, and by the Criminal Court of Appeals in the cases of *Houston Hudson v. State,* 2 Okla. Cr. 176, 101 Pac. 275, and *Josh McCord v. State,* 2 Okla. Cr. 214, 101 Pac. 280. The cases above referred to contain such a thorough discussion of this matter, and quote from such an overwhelming

weight of authorities, that it is not necessary to repeat what will be found in them. If we are in error touching this matter, it will be an easy thing for the enforcement officers of this state to make a test case in a civil proceeding, and carry it to the Supreme Court of the United States for final determination. If that tribunal sees fit to reverse its former decisions, we will be bound by such action, and cheerfully follow it. But, until this is done, we feel constrained to adhere to the decisions as they stand now.

"If the decisions of the Supreme Court of the United States are wrong, application should, and can, be made to that court for a reversal of these decisions. It is a waste of time, money, and labor to appeal to this court to set aside anything which that court has decided. The Supreme Court of the United States of necessity must be the final judge of the construction of the United States Constitution. Otherwise we would have a hydra-headed judicial system in which 47 independent appellate courts could construe this instrument as they pleased, which would result, not only in confusion, but in civil war. Each tribunal would be supported by the military force of the government which it represented. This would result in death and destruction to our form of government. Certainly no reasonable person desires this court to adopt a policy which would bring about such serious consequences as this. It would be treason itself. One thing can be depended upon, and that is that this court will not make any such insane attempts. Under the Constitution of the United States, and the decisions of the Supreme Court of the United States, it is clear that any resident of Oklahoma can purchase intoxicating liquor in another state, and ship it into this state, and to points of destination, for his own personal use, and that such shipments constitute interstate commerce, and that any state law to the contrary is void. But these shipments lose their character as interstate commerce as soon as they reach the point of their destination, and any further shipment of such liquor is subject to state control. The exact language of the Supreme Court of the United States is as follows: 'Equally established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States. * * * But the right of persons in one state to ship liquor into another state to his

residence for his own use is derived from the Constitution of the United States, and does not rest on the state law. Either the conditions attached by the state law unlawfully restrain the right, or they do not. If they do, then they are void.' And again, the court, speaking of the right of every citizen of a state to purchase, and have shipped to him liquors for his own use, says: 'But the right arises from the Constitution of the United States. It exists wholly independent of the will of either the lawmaking or executive power of the state. It takes its original out of the state of South Carolina, and finds its support in the Constitution of the United States. Whether or not it can be exercised depends solely upon the will of the person making the shipment, and cannot be, in advance, controlled or limited by the action of the state in any department of its government.' *Vance v. Vandercook,* 170 U. S. 439, 18 Sup. Ct. 674, 42 L. Ed. 1100."

In the case of *Schwedes v. State,* 1 Okla. Cr. 246, 99 Pac. 804, the following instructions were requested by the defendant on the trial of the case:

"No. 7. If you find the liquor charged to have been carried by the defendant had just been imported by a common carrier from some person in another state of this Union, and that the same was imported for the personal use of the defendant, then the defendant had a right to receive and carry and convey the same to his own house or apartment, in the original package, for his personal use, as long as there was no intent on his part to sell or dispose of the same contrary to law, or to put the same to an unlawful use.

"No. 8. If you find that the liquor which was charged to have been carried by the defendant was in the original package and the property of the defendant, and had been imported from another state or foreign country by a common carrier for his own personal use and consumption, and not for the purpose of sale, barter, or exchange, then you should find the defendant not guilty."

"No. 10. You are instructed that if you find that the defendant did carry the intoxicating liquors charged in the information, and that the same was imported from a foreign state or country, for his own use and consumption, and not for the purpose of barter, sale, or exchange, then the defendant had a right to receive the same and carry it to his own apartments in the original

3 Cr.—31.

package that it was shipped in, so long as he did not convey the same for any other use."

The defendant, being convicted, appealed. The Supreme Court of Oklahoma in a well-considered opinion by Chief Justice Williams held that these instructions should have been given. Further discussion of this question is unnecessary.

The judgment of the lower court is reversed, and the cause remanded, with directions to the trial court to grant the defendant a new trial.

Reversed and remanded.

DOYLE and OWEN, JUDGES, concur.