# ROY GASTINEAU v. STATE.

No. A-314.   Opinion Filed June 15, 1912.

1. **INTOXICATING LIQUORS—Interstate Shipments.** A person living in the western part of the state of Oklahoma which formerly comprised the territory of Oklahoma has the right, under the interstate commerce clause of the Constitution of the United States, to ship intoxicating liquors into this state and convey them to his home or place of business for his own use, and this right cannot be interfered with or abridged by any state law.

2. **SAME—Interstate Conveyances.** A state has the undoubted right to regulate the intrastate conveyance or shipment of intoxicating liquors, but cannot interfere with or regulate the interstate shipment or conveyance of such liquors.

(Syllabus by the Court.)

*Appeal from Dewey County Court;*
*S. M. Byers, Judge.*

*Robert E. Adams* and *Harry E. Smith,* for the appellant.

*Fred S. Caldwell,* for the state..

Appellant was convicted for a violation of the prohibitory liquor law, and appealed. Reversed.

In the early part of 1910 an opinion was prepared in this case, but it was inadvertently mislaid and lost and never delivered. The matter has recently been called to our attention. This statement is made to explain why a cause pending so long on our docket has just been decided.

FURMAN, P. J. The evidence adduced at the trial of this cause discloses the following facts: 'Roy Ogden, a resident of Seiling, Dewey county, Oklahoma, ordered from the Old Distilling House, of Kansas City, Mo., four quarts of whisky

7 Cr.—16

to be shipped to him in Oklahoma.   When the goods arrived at the express office at Canton, Oklahoma, the consignee, Roy Ogden, gave to Roy Gastineau, the defendant below, who was a freighter, or common carrier, a signed written order on the express company for the liquor and requested said defendant to bring same to him at his home.   The defendant Gastineau accordingly presented the order, procured the whisky, and was in the act of transporting the same from the office of the express company at Canton to the consignee's home near Seiling, Oklahoma, when he was stopped by the deputy sheriff, served with a search warrant, and the liquor confiscated.   Defendant was afterwards arrested, tried, and convicted of the offense of transporting spirituous liquors from one point within the state to another, in violation of the prohibitory law of Oklahoma.   Defendant's motion for a new trial and in arrest of judgment having been overruled, he brings the case here by petition in error and case-made.

The recent decision of the Supreme Court of the United States with reference to interstate shipments of liquor into that portion of the state which formerly comprised the Indian Territory has no application to that portion of the state which formerly comprised Oklahoma Territory.   Under the repeated decisions of the Supreme Court of the United States, a citizen living in the western part of the state of Oklahoma has the right, under the interstate commerce clause of the Constitution of the United States, to ship liquor into the state to his residence or place of business for his own use, and this right cannot be interfered with or abridged by any state law.   We considered this question fully in the case of *Titsworth v. State,* 2 Okla. Cr. 272, and we there said:

"The Constitution of the United States declares that Congress shall have power 'to regulate commerce with foreign nations, and among the several states, and with the Indian tribes.' To 'regulate' means to control.   So it is seen that the power of regulating or controlling commerce between the states is vested exclusively in Congress, and that no state has the power to pass any law upon this subject, or which would in any manner interfere with or abridge the right of one of its citizens to pur-

chase in another state any article of commerce which could be lawfully sold in the state where the purchase is made, and bring it to his home in his own state for his personal use. This has been decided so often that no person who is well informed upon this subject will question the rule above stated. This matter has been passed upon by the Supreme Court of Oklahoma in *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804, and by the Criminal Court of Appeals in the cases of *Houston Hudson v. State, ante* p., 161, 101 Pac. 275; *Webb High v. State, ante,* p. 161, 101 Pac. 115; and *Josh McCord v. State, ante,* p 214, 101 Pac. 280. The cases above referred to contain such a thorough discussion of this matter, and quote from such an overwhelming weight of authorities, that it is not necessary to repeat what will be found in them. If we are in error touching this matter, it will be an easy thing for the enforcement officer of this state to make a test case in a civil proceeding, and carry it to the Supreme Court of the United States for final determination. If that tribunal sees fit to reverse its former decisions, we will be bound by such action, and cheerfully follow it. But, until this is done, we feel constrained to adhere to the decisions as they stand now.

"If the decisions of the Supreme Court of the United States are wrong, application should, and can, be made to that court for a reversal of these decisions. It is a waste of time, money, and labor to appeal to this court to set aside anything which that court has decided. The Supreme Court of the United States, of necessity, must be the final judge of the construction of the United States Constitution. Otherwise we would have a hydro-headed judicial system in which 47 independent appellate courts could construe this instrument as they pleased, which would result, not only in confusion, but in civil war. Each tribunal would be supported by the military force of the government which it represented. This would result in death and destruction to our form of government. Certainly no reasonable person desires this court to adopt a policy which would bring about such serious consequences as this. It would be treason itself. One thing can be dependend upon, and this is, that this court will not make any such insane attempt. Under the Constitution of the United States, and the decisions of the Supreme Court of the United States, it is clear that any resident of Oklahoma can purchase intoxicating liquors in another state, and ship them into this state, and to points of destination, for his own personal use, and that such shipments constitute interstate commerce, and that any state law to the contrary is void. But these shipments lose their

character as interstate commerce as soon as they reach the point of their destination, and any further shipment of such liquors is subject to state control. The exact language of the Supreme Court of the United States is as follows:

" 'Equally established is the proposition that the right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States. * * * But the right of persons in one state to ship liquor into another state to his residence for his own use is derived from the Constitution of the United States, and does not rest on the state law. Either the conditions attached by the state law unlawfully restrain the right, or they do not. If they do, then they are void.'

"And again, the court, speaking of the right of every citizen of a state to purchase and have shipped to him liquors for his own use, says:

" 'But the right arises from the Constitution of the United States; it exists wholly independent of the will of either the law-making or executive power of the state; it takes its origin out of the state of South Carolina, and finds its support in the Constitution of the United States. Whether or not it can be exercised depends solely upon the will of the person making the shipment, and cannot be, in advance, controlled or limited by the action of the state in any department of its government.' (*Vance v. Vandercook,* 170 U. S. 439, 18 Sup. Ct. 674, 42 L. Ed. 1100)"

This question was passed upon again by the Supreme Court of the United States in the case of *L. & N. Ry. Co. v. F. W. Cook Brewing Co.* The opinion was delivered on the 22nd day of January, 1912, and will be found in the Supreme Court Reporter, vol. 32, p. 189. This case construed the statute of Kentucky which made it a crime to ship intoxicating liquors into local option or dry counties in that state, and the Supreme Court of the United States held:

"That beer and other intoxicating liquors are a recognized and legitimate subject of interstate commerce, and that it is not competent for any state to forbid any common carrier to transport such articles from a consignor in one state to a consignee in another state."

The court went further and said:

"Valid as the Kentucky legislation undoubtedly was as a regulation in respect to interstate shipments of such articles, it was most obviously never an effective enactment in so far as it undertook to regulate interstate shipments to dry points. Pending this very litigation, the Kentucky Court of Appeals, upon the authority of the line of cases above cited, reached the same conclusion. *Cincinnati, N. O. & T. P. R. Co. v. Com.,* 126 Ky. 563, 104 S. W. 394.

"The obligation of the railroad company to conform to the requirements of the Kentucky law, so far as that law prohibited interstate shipments, is clear, and to this extent its circular notification was commendable. But the duty of this company, as an interstate common carrier for hire, to receive for transportation to consignees upon its line in Kentucky from consignors in other states, any commodity which is an ordinary subject of interstate commerce and such transportation, could not be prohibited by any law of the state of such consignee, inasmuch as any such law would be an unlawful regulation of interstate commerce not authorized by the police power of the state. It is obvious, therefore, that in so far as the Kentucky statute was an illegal regulation of interstate commerce, it neither imposed an obligation to obey, nor affords an excuse for refusal to perform the general duty of the railroad company as a common carrier of freight."

It is admitted by the prosecution that a citizen of Oklahoma may ship intoxicating liquors into the western portion of the state for his own use as interstate commerce, but that when it reaches the depot its character as interstate commerce ceases, and it cannot be taken from the depot to the home or place of business of the consignee. It is illogical to say that the right to ship to the depot exists, but that such shipment cannot be carried to the home of the consignee and there kept for his own personal use. In effect, this would be a denial of the right to ship intoxicating liquors to the depot, for what benefit would the right to ship such liquors to the depot be if the consignee, or some one authorized by him to so do, could not take the liquors from the depot to the home or place of business of the consignee? It is a well-established and familiar principle of law that a right to do a certain thing carries with it the right to do

all other things necessary to the complete enjoyment of the right
expressly granted. It might just as well be said that a farmer
had the right to ship his cotton or grain out of the state on the
railroad, but that he could not convey it from his home to the
depot for shipment. But this is not an open question, because
in the case of *Vance v. Vandercook,* 170 U. S. 439, the Supreme
Court of the United States in express language declared:

"The right of a person in one state to ship liquors into
another state to his residence for his own use is derived from
the Constitution of the United States, and does not rest on the
state law."

We are therefore compelled to hold that the conviction of
appellant in this case was illegal, and it is ordered that the judg-
ment be reversed, and the cause be remanded.

ARMSTRONG and DOYLE JJ., concur.