## WEBB HIGH *et al.* v. STATE.

No. 316.     Opinion Filed March 29, 1909.

(101 Pac. 115.)

1.  EVIDENCE—Presumption of Innocence—Sufficiency of Evidence.
    The presumption of innocence of one on trial for a crime is one
    of fact and of law, and no person can be convicted, even under
    a joint information, without proof of his individual guilt.

2.  TRIAL—Presumptions and Burden of Proof—Directing Verdict.
    Where a defendant pleads not guilty and admits nothing against
    himself, the burden of proof is on the state to make a case
    against him which will entitle it to go to a jury; and, where the
    evidence only raises a mere suspicion of the guilt of the accused,
    it is insufficient to warrant a conviction, and the court should
    direct a verdict of acquittal, when requested by defendant.

3.  INTOXICATING LIQUORS—Interstate Commerce—Conveyance
    to Home.   Under subdivision 3 of section 8, art. 1, of the Con-
    stitution of the United States, a resident of this state has a
    lawful right to order and receive a shipment of whisky by inter-
    state commerce from another state, and to convey the same from
    the depot at which the shipment may arrive, in the original
    package to his home.

4.  SAME—The clause in the prohibition ordinance of the Constitu-
    tion of the state of Oklahoma (section 499, Bunn's Ed.), while
    prohibiting the conveyance of intoxicating liquors from one place
    within this state to another place therein, has no application to
    interstate shipments until there has been a delivery of an inter-
    state shipment of said liquors.

5.  SAME.  Carrying or conveying intoxicating liquors from the
    railroad station to the home of the consignee is a part of the
    interstate commerce transportation, when they were shipped from
    another state, and is not a violation of the constitutional clause
    making the conveyance of such liquors from one place within
    this state to another place therein an offense.
    2 Cr.—11

6.    **SAME.** The constitutional clause prohibiting the conveyance of intoxicating liquors from one place within this state to another place therein, in the absence of prohibitory legislation by the state, is not within the scope and operation of the act of Congress of August 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177), commonly known as the "Wilson Act."

(Syllabus by the Court.)

*Error from Kiowa County Court; J. W. Mansell, Judge.*

Webb High and others were convicted of unlawfully conveying intoxicating liquor from one point within the state to another, and they brought error to the Supreme Court of the state of Oklahoma, whence the cause was transferred to the Criminal Court of Appeals. Reversed and remanded with direction.

The plaintiffs in error (hereinafter designated as defendants) were, on March 31, 1908, convicted in the county court of Kiowa county on an information, the charging part of which reads as follows:

"That on the 18th day of March, A. D. 1908, at and within the said county and within the jurisdiction of said court, Webb High, Curley Bradley, Harry Whittemore, and George Broughton, then and there being, did, then and there unlawfully convey intoxicating liquors to wit, one hundred pints of whisky from one place within the state of Oklahoma to another place within the state of Oklahoma, to wit, from the Rock Island Depot at Mountain View, said county and state, to a point near the Chickasha Mill and Elevator Company's Elevator at Mountain View, said county and state. Said conveyance of intoxicating liquor as aforesaid not being then and there the conveyance of a lawful purchase of intoxicating liquor as provided by law."

The information was filed before the enactment of the prohibitory law, and was based upon that clause of the Constitution (section 499, Bunn's Ed.) which provides:

"Or who shall ship or in any way convey such liquors from one place within this state to another place therein except the conveyance of a lawful purchase as hereinafter authorized, shall be punished on conviction thereof, by a fine not less than fifty dollars and by imprisonment not less than thirty days for each offense."

Three witnesses testified on behalf of the prosecution. Bob Allen, a deputy sheriff, testified that he arrested the defendants and made the seizure on the evening of March 18, 1908, on the public road, about 150 feet from the Rock Island Depot, at Mountain View, without any warrant or other process, asserting his right to do so by virtue of the foregoing clause of the Constitution, at which time all of said defendants were riding on a delivery wagon from the depot towards the town; that in said delivery wagon was a barrel which looked like a sugar barrel; that he had seen said barrel at the depot and examined it, and it smelled like whisky; that said barrel, when opened was found to contain 100 pints of whisky. The testimony of F. W. Fanson, railroad and express agent of Mountain View, shows that the defendant Whittemore, on March 14, 1908, purchased an express money order for the sum of $36, payable to Casey & Swasey, of Ft. Worth, Tex.; that on the 18th day of March, 1908, he received said barrel as railroad agent, the same having been shipped from Ft. Worth, Tex., to the name of W. M. Silvers, and was received by the defendant Whittemore, he signing the name of W. M. Silvers to the express receipt and paying express charges of $3.40; that the defendant Broughton (drayman) was standing by when he delivered the barrel to said defendant Whittemore. The testimony of D. George Jones is not material to any issue in this case.

The defendants testified in their own behalf, in substance, as follows: The defendant Harry Whittemore testified that he purchased an express money order for the sum of $36, payable to Casey & Swasey, of Ft. Worth, Tex., from the agent of the Rock Island Railroad and Express Company at Mountain View, Okla., on the 14th day of March, 1908; that said money order was by said defendant forwarded to the payee at Ft. Worth, Tex., together with an order for 48 quarts of Whisky; that said whisky was shipped from Ft. Worth to Mountain View packed in a barrel, and was there received on the 18th day of March, 1908; that he paid the express charges thereon, and hired the defendant Broughton (a drayman) to haul it to his home; and that he purchased said

whisky for his own use, and no other person had any interest in it. The defendant Broughton testified that he was running a delivery wagon at Mountain View, and was hired by the defendant Whittemore to haul said barrel from the depot to his home, and that he did not know at that time what said barrel contained. The defendants Webb High and Curley Bradley testified that they were at the depot and caught a ride to town in the delivery wagon; that Deputy Sheriff Allen, about 150 feet from the depot, stopped the wagon, arrested the defendants, and seized a barrel that was in the wagon; that they in no way assisted to load or convey the barrel, and that they knew nothing about the barrel or its contents.

The testimony shows that there was nothing to indicate the contents of the barrel, and that it resembled a sugar barrel. The defendants were placed in jail, and the next day were taken to Hobart, and the information in this case was filed. Defendants were arraigned, and entered pleas of not guilty. The petition in error and case-made was filed in the Supreme Court July 30, 1908, and said cause was, upon the organization of the Criminal Court of Appeals, duly transferred by the Supreme Court, as by law provided, and is now before the court for review.

*Thos. W. Connor* and *O. J. Logan,* for plaintiffs in error.
*Fred S. Caldwell,* for the State.

DOYLE, JUDGE. (after stating the facts as above). It is contended by counsel for defendants "that the verdict and judgment of guilty in said case is not sustained by the evidence, and is contrary to law."

At the close of taking of the testimony, defendants, and each of them, requested the court to direct a verdict of acquittal as to each of said defendants, on the ground that the evidence was insufficient to support a conviction. The court refused to so direct the jury, and allowed exceptions. Under the facts which the evidence in this case proved, or tended to prove, we believe the court should have directed an acquittal as requested. The record clearly shows that the defendants Webb High and Curley Bradley were

only riding on the wagon in which the whisky was being conveyed; that they had no interest or ownership in the whisky, no knowledge that it was whisky, and that they took no part in the conveyance. It further shows that the defendant George Broughton (a drayman) was conveying the barrel that contained the whisky as he would any other article for hire. His testimony that he did not know its contents is undisputed.

As to the defendant Harry Whittemore, the record presents a question involving the construction of that clause of the Constitution (section 499, Bunn's Ed.) which is set forth in the statement of facts, as affecting interstate commerce in shipments of intoxicating liquor. The question is, was the defendant Whittemore. in the removal of the whisky from the depot to his home, engaged in conveying it within the purport and meaning of said clause of our Constitution?

In construing the language of said clause, it is well to remember that it was framed to meet the requirements of the prohibition paragraph of the Enabling Act (Bunn's Ed. p. 144, § 507). Reference to said paragraph shows that the only language therein regarding the conveyance of intoxicating liquors is as follows:

"507. Second, that the manufacture, sale, barter, giving away, or otherwise furnishing except as hereinafter provided, of intoxicating liquors within those parts of said state now known as the Indian Territory and the Osage Indian Reservation and within any parts of said state which existed as Indian Reservations, on the first day of January, nineteen hundred and six, is prohibited for a period of twenty-one years from the date of the admission of said state into the Union, and thereafter until the people of said state shall otherwise provide by amendment of said Constitution and proper state legislation. Any person, individual or corporate, who shall manufacture, sell, barter, give away, or otherwise furnish any intoxicating liquor of any kind including beer, ale, and wine, contrary to the provisions of this section, or who shall, within the above described portions of said state, advertise for sale or solicit the purchase of any such liquors, or who shall ship or in any way convey such liquors from other parts of said state into the portions hereinbefore described, shall be punished, on conviction thereof,

by fine not less than fifty dollars and by imprisonment not less than thirty days for each offense."

Thus we see the prohibition requirement of the Enabling Act entirely omitted the question of interstate conveyance, and was drawn so as not to be repugnant to the interstate commerce clause of the federal Constitution.

In view of the fact that at the time of the alleged offense there had been no prohibitory legislation enacted, we do not deem it necessary to the decision of this case that we should enter upon the discussion of the existence and extent of the police power residing in the several states of the Union. It is quite as unnecessary to argue that the power of Congress to regulate commerce between the citizens of the different states was not intended to abridge the lawful exercise of the police power by the state governments. However, if judicial decisions can be said to settle a question, the question decisive of this case has been clearly and properly settled by the highest court of our country.

In 1886 the Legislature of the state of Iowa passed an act (Act 21st Gen. Assem. p. 81, c. 66) forbidding any common carrier from bringing into that state any intoxicating liquors from any other state or territory of the United States without first having been furnished with a certificate, under the seal of the county auditor of the county to which said liquor is to be transported or is consigned for transportation, certifying that the consignee or person to whom said liquor is to be transported, conveyed, or delivered is authorized to sell intoxicating liquor in said county. This statute was declared invalid by the Supreme Court of the United States in the case of *Bowman v. Chicago & N. W. R. R. Co.*, 125 U. S. 465, 8 Sup. Ct. 689, 1062, 31 L. Ed. 700. The opinion of the court was delivered by Mr. Justice Mathews, who, in part, says:

"The statute of Iowa under consideration falls within this prohibition. It is not an inspection law; it is not a quarantine or sanitary law. It is essentially a regulation of commerce among the states within any definition heretofore given to that term, or which can be given; and, although its motive and purpose are to perfect the policy of the state of Iowa in protecting its citizens

against the evils of intemperance, it is none the less on that account a regulation of commerce. If it had extended its provisions so as to prohibit the introduction into the state from foreign countries of all importations of intoxicating liquors produced abroad, no one would doubt the nature of the provision as a regulation of foreign commerce. Its nature is not changed by its application to commerce among the states. And here is the limit between the sovereign power of the state and the federal power. That is to say, that which does not belong to commerce is within the jurisdiction of the police power of the state, and that which does belong to commerce is within the jurisdiction of the United States. * * * The same process of legislation and reasoning adopted by the state and its courts would bring within the police power any article of consumption that a state might wish to exclude, whether it belonged to that which was drank or to food and clothing.

"In *Leisy v. Hardin,* 135 U. S. 100, 10 Sup. Ct. 681, 34 L. Ed. 128, it was recognized that ardent spirits, distilled liquors, ale, and beer are subjects to exchange, barter, and traffic like any other commodity in which a right of traffic exists and that, being thus articles of commerce, a state cannot, in the absence of legislation on the part of Congress, prohibit their importation from abroad or from a sister state, nor, when imported prohibit their sale by the importer; and, accordingly, it was held that a statute of the state of Iowa prohibiting the sale of intoxicating liquors, except for pharmaceutical, medical, chemical, or sacramental purposes, and under a license from a county court of the state, was, as applied to a sale by the importer and in the original packages or kegs, unbroken and unopened, of such liquors manufactured and brought from another state, unconstitutional and void, as repugnant to the clause of the Constitution granting to Congress the power to regulate commerce with foreign nations and among the several states."

Following closely upon this decision, and probably in consequence of it, Congress, upon August 8th of the same year, enacted what is commonly known as the "Wilson Bill," which provides:

"That all fermented, distilled, or other intoxicating liquors, or liquors transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall upon arrival in such state or territory, be subject to the operation and

effect of the laws of such state or territory, enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

This so-called "Wilson Bill" has been construed by several decisions of the Supreme Court of the United States. In the case of *Scott v. Donald*, 165 U. S. 66, 17 Sup. Ct. 269, 41 L. Ed. 632 —this being a case wherein the plaintiff sought to recover damages caused by the action of the defendants, who were state constables of the state of South Carolina, in seizing and carrying away several packages of wines and liquors belonging to plaintiffs and at the time of the seizure in the possession of the railroad company, which, as common carriers, had brought the packages within the state—Mr. Justice Shiras, who delivered the opinion of the court, in part says:

"The evils attending the vice of intemperance in the use of spirituous liquors are so great that a natural reluctance is felt in appearing to interfere, even on constitutional grounds, with any law whose avowed purpose is to restrict or revent the mischief. So long, however, as state legislation continues to recognize wines, beer, and spirituous liquors as articles of lawful consumption and commerce, so long must continue the duty of the federal courts to afford to such use and commerce the same measure of protection, under the Constitution and laws of the United States, as is given to other articles.

"We cheerfully concede that the law in question was passed in the *bona fide* exercise of the police power. We disclaim any imputation to the law makers of South Carolina, of a design, under the guise of a domestic regulation, to interfere with the rights and privileges of either her own citizens or those of her sister states, which are secured to them by the Constitution and laws of the United States. But, as we have had more than one occasion to observe, our willingness to believe that this statute was enacted in good faith, and to protect the people of the state from the evils of unrestricted importation, manufacture, and sale of ardent spirits cannot control the final determination

whether the statute, in some of its provisions, is not repugnant to the Constitution of the United States. As we said in *Mugler v. Kansas,* 123 U. S. 661, 8 Sup. Ct. 273, 31 L. Ed. 210: 'If a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.' "

After reviewing numerous decisions, the court, at page 98 of 165 U. S., page 272 of 17 Sup. Ct. (41 L. Ed. 632), concludes as follows:

"In the light of these cases the act of South Carolina of January 2, 1895, must, as to those of its provisions which affect the plaintiff in the present suits, stand condemned. It is not an inspection law. The prohibition of the importation of the wines and liquors of other states by citizens of South Carolina for their own use is made absolute, and does not depend on the purity or impurity of the articles. Only the state functionaries are permitted to import into the state, and thus those citizens who wish to use foreign wines and liquors are deprived of the exercise of their own judgment and taste in the selection of commodities. To empower a state chemist to pass upon what the law calls the 'alcoholic purity' of such importations by chemical analysis can scarcely come within any definition of a reasonable inspection law. It is not a law purporting to forbid importation, manufacture, sale, and use of intoxicating liquors, as articles detrimental to the welfare of the state and to the health of the inhabitants, and hence it is not within the scope and operation of the act of Congress of August, 1890. That law was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subject of legitimate commerce. When that law provided that 'all fermented, distilled, or intoxicating liquors transported into any state or territory remaining therein for use, consumption, sale, or storage therein, should upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being

introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors and be valid. But the state cannot, under the congressional legislation referred to, establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use which are admitted to be lawful."

In the case of *Rhodes v. State of Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1096, the court in part says:

"Interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee."

And as a result of this ascertainment of the meaning of the Wilson Act it was held that, as the act of moving the goods preceded the period affixed by the Wilson Act at which the state power could attach, the conviction was erroneous.

In *Vance v. W. A. Vandercook Co.,* 170 U. S. 439, 18 Sup. Ct. 676, 42 L. Ed. 1102, Mr. Justice White, in delivering the opinion of the court, in part says:

"In the inception it is necessary to bear in mind a few elementary propositions which are so entirely concluded by the previous adjudications of this court that they need only to be briefly recapitulated.

"(a) Beyond dispute, the respective states have plenary power to regulate the sale of intoxicating liquors within their borders, and the scope and extent of such regulations depend solely on the judgment of the law-making power of the states; provided always they do not transcend the limits of state authority in invading rights which are secured by the Constitution of the United States, and provided, further, that the regulations as adopted do not operate a discrimination against the rights of residents or citizens of other states of the Union.

"(b) Equally well established is the proposition that the

right to send liquors from one state into another, and the act of sending the same, is interstate commerce, the regulation whereof has been committed by the Constitution of the United States to Congress, and hence that a state law which denies such a right, or substantially interferes or hampers the same, is in conflict with the Constitution of the United States.

"(c)   It is also certain that the settled doctrine is that the power to ship merchandise from one state into another carries with it, as an incident, the right in the receiver of the goods to sell them in the original packages, any state regulation to the contrary notwithstanding; that is to say, that the goods received by interstate commerce remain under the shelter of the interstate commerce clause of the Constitution, until by a sale in the original package they have been commingled with the general mass of property in the state.

"This last proposition, however, whilst generally true, is no longer applicable to intoxicating liquors, since Congress, in the exercise of its lawful authority, has recognized the power of the several states to control the incidental right of sale in the original packages of intoxicating liquors shipped into one state from another so as to enable the states to prevent the exercise by the receiver of the accessory right of selling intoxicating liquors in the original packages except in conformity to lawful state regulations.   In other words, by virtue of the act of Congress the receiver of intoxicating liquors in one state, sent from another, can no longer assert a right to sell in defiance of the state law in the original packages, because Congress has recognized to the contrary.   The act of Congress referred to was approved August 8, 1890, c. 728, 26 Stat. 313 (U. S. Comp. St. 1901, p. 3177), and is entitled 'An act to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases.'"

The scope and effect of this act of Congress have been settled. *In re Rahrer,* 140 U. S. 545, 11 Sup. Ct. 865, 35 L. Ed. 572: *Rhodes v. State of Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088; *Scott v. Donald, supra.*

Further on, the court says:

"But the right of persons in one state to ship liquor into another state to a resident for his own use is derived from the Constitution of the United States, and does not rest on the grant of

the state law. Either the conditions attached by the state law unlawfully restrain the right or they do not. If they do—and we shall hereafter examine this contention—then they are void. If they do not, then there is no lawful ground of complaint on the subject. We are thus brought to examine whether the regulations imposed by the state law on the right of the residents' of other states to ship into the state of South Carolina alcoholic liquor to the residents of that state, when ordered by them for their use, are so onerous and burdensome in their nature as to substantially impair the right; that is, whether they so hamper and restrict the exercise of the right as to materially interfere with, or, in effect, prevent, its enjoyment."

In the case of *Heyman v. Southern Railway Co.*, 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178, Mr. Justice White. delivering the opinion of the court, in part says:

"As the general principle is that goods moving in interstate commerce cease to be such commerce only after delivery and sale in the original package, and as the settled rule is that the Wilson law was not an abdication of the power of Congress to regulate interstate commerce, since that law simply affects an incident of such commerce by allowing the state power to attach after delivery and before sale, we are not concerned with whether, under the law of any particular state, the liability of a railroad company as carrier ceases and becomes that of a warehouseman on the goods reaching their ultimate destination, before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier. For, whatever may be the divergent legal rules in the several states concerning the precise time when the liability of a carrier, as such, in respect to the carriage of goods, ends, they cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and thereby comes under the control of the state authority.

"Of course, we are not called upon in this case, and do not decide, if goods of the character referred to in the Wilson Act, moving in interstate commerce, arrive at the point of destination, and, after notice and full opportunity to receive them, are designedly left in the hands of the carrier for an unreasonable time, that such conduct on the part of the consignee might not justify, if affirmatively alleged and proven, the holding that goods so dealt

with have come under the operation of the Wilson Act because constructively delivered. We say we are not called upon to consider this question for the reason that no facts are shown by the record justifying the passing on such a proposition. And as in this case we deal only with the power of the state to enforce its police regulations against goods of the character of those enumerated in the Wilson Act, the subject of interstate commerce, before delivery, we must not be understood as in any way limiting or restricting the ruling made in *Vance v. W. A. Vandercook Co., supra,* upholding the right of a citizen of one state to bring from another state into the state of his residence, and keep therein, for his personal use, the merchandise referred to in the Wilson Act. In other words, as in the case at bar, delivery had not taken place when the seizures were made, and the control of the state over the goods had not attached. We are not called upon to consider whether, if the power of the state had attached by delivery, the state might not have levied upon the goods on the charge that they had not been *bona fide* brought into the state, and were not held by the consignees for their own use. and. therefore, were not within the ruling in *Vance v. W. A. Vandercook Co.. supra."*

See. also: *American Express Co. v. Iowa,* 196 U. S. 133, 25 Sup. Ct. 182, 49 L. Ed. 417; *Adams Express Co. v. Iowa,* 196 U. S. 147, 25 Sup. Ct. 185, 49 L. Ed. 424; *Pabst Brewing Co. v. Crenshaw,* 198 U. S. 17, 25 Sup. Ct. 552, 42 L. Ed. 925; *Delamater v. South Dakota,* 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724; *Foppiano v. Speed,* 199 U. S. 501, 26 Sup. Ct. 138, 50 L. Ed. 288.

In the foregoing cases quoted and cited the various liquor laws of the respective states were considered and construed, and said laws were held repugnant to subdivision 3 of section 8, art. 1, of the Constitution of the United States, which provides that, "The Congress shall have power to regulate commerce with foreign nations and among the several states and with Indian Tribes"— commonly called the "interstate commerce clause" of the federal Constitution.

These repeated and deliberate declarations of the Supreme Court of the United States establish two propositions: First, that the act of Congress commonly known as the "Wilson Bill" permits the states, in the exercise of their police power, to enact laws pro-

hibiting the sale, and making interstate shipments of intoxicating liquors upon their arrival in the state subject to the operation of the police powers of the state. However, the State Legislatures are not authorized to declare when such importations shall become subject to state control, nor can the state in any manner change or affect the enactment made by Congress upon the subject. Under the Constitution Congress has exclusive power. Second, that the right to ship intoxicating liquors from one state into another and the shipment of the same is interstate commerce, and any citizen has a right to ship intoxicating liquors from one state into another, and a state law, organic or legislative, which denies or diminishes this right, or substantially abridges, interferes, or hampers the same, is in conflict with the Constitution of the United States, and this court is concluded by the decisions of the Supreme Court of the United States on this question.

The seizure of the shipment in this case before it reached its destination denied to the consignee his constitutional right to receive the shipment.

Before the enactment of the law making the Criminal Court of Appeals the court of exclusive appellate jurisdiction in all criminal cases, this question was before this court, and, under the first act requiring constitutional questions to be certified to the Supreme Court, the question was certified to said court for its final decision, and a decision was by said court rendered in said cause, *Schwedes v. State,* 1 Okla. Cr. 245, 99 Pac. 804. The syllabus reads as follows:

"Under subdivision 3 of section 8, art. 1, of the Constitution of the United States commonly referred to as the 'interstate commerce clause' of the Constitution, a resident of one state has the right to have shipped to him from another state alcoholic liquors when ordered by him for his and his family's use, and to keep the same for such use; and the state cannot, under its police power, enact laws so as to substantially hamper or burden such constitutional right to have such shipment made, and to receive and retain the same, for personal use."

The foregoing authorities settle the question that conveying

an unbroken original package containing intoxicating liquors from the railroad depot to the home of the consignee is a part of the interstate commerce transportation; and in this case the interstate shipment was not completed until the same was delivered at the home of the defendant Whittemore. In this case we are not called upon to decide, and we do not attempt to construe, the prohibitory law enacted subsequent to the filing of the information. We have only construed the clause of the prohibitory ordinance of the Constitution, upon which this prosecution is predicated.

We are of the opinion that the arrest and seizure by the deputy sheriff was unwarranted and without authority of law, as no offense had been committed: First, because said clause of the prohibitory ordinance of the Constitution of the state of Oklahoma does not purport to abrogate the right to receive an interstate commerce shipment of intoxicating liquors; second, because said constitutional clause could not abrogate or in any manner diminish the protection conferred by the interstate commerce clause of the federal Constitution.

For the reasons hereinbefore stated, the judgment is reversed, and the case remanded with directions to the county court of Kiowa county to dismiss the case.

FURMAN, PRESIDING JUDGE, and BAKER, JUDGE, concur.