### STATE v. EIGHTEEN CASKS OF BEER *et al.*

No. 895.    Opinion   Filed October 4, 1909.

(104 Pac. 1093.)

COMMERCE—Interstate—Intoxicating Liquor — Confiscation—Police Power.—A citizen of Oklahoma having purchased intoxicating liquors in another state and caused the same to be transported to him as consignee in this state by an interstate shipment, the laws of this state by virtue of the police power (Act Cong. Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177] attach immediately after the consummation of the delivery of the carrier to the consignee. (a) Such consignee having received the actual and exclusive possession of such liquors from the carrier at its depot, and retaining such possession on its said premises with the purpose and the intention of selling and bartering the same contrary to the laws of this state, such liquors may be seized and confiscated under sections 5, 6, art. 3, of the enforcing act (Sess. Laws 1907-08, p. 605, c. 69), before the same have been by said consignee conveyed from the carrier's premises to the consignee's residence, place of business, or warehouse. (b) Such consignee having received the actual and exclusive possession of such liquors from the carrier at its depot, and retaining such possession on its said premises for his or his family's use, such liquors cannot be seized and confiscated under sections 5 and 6 of the enforcing act (Sess. Laws 1907-08, p. 605), either before or after the same have been conveyed from the carrier's premises to the consignee's residence.

(Syllabus by the Court.)

*Error from Oklahoma County Court; Sam Hooker, Judge.*

Action submitted upon an agreed statement of facts by the State of Oklahoma against Eighteen Casks of Beer claimed by B. W. Tucker. Judgment for claimant, and the State brings error. Reversed and rendered.

This action was tried in the lower court by virtue of section 4717, Wilson's Rev. & Ann. St. 1903, under the following agreed facts to-wit:

"Prior hereto the said B. W. Tucker purchased outside of the state of Oklahoma a car load of beer, and had the same shipped to him at Oklahoma City, Oklahoma county, Okla., by the Atchison, Topeka & Santa Fe Railway Company, a corporation engaged in doing an interstate business between said Oklahoma City and points outside of the state of Oklahoma. That, upon the arrival of said car load of beer at its destination in said Oklahoma City, the said B. W. Tucker appeared at the office of the said Atchison, Topeka & Santa Fe Railway Company, in said Oklahoma City, and paid the freight thereon, surrendered up the bill of lading therefor, and took possession thereof. Said car load of beer upon its delivery to the said B. W. Tucker at said Oklahoma City consisted of 120 casks, all of which, with the exception of the 18 casks here involved, were by the said B. W. Tucker removed from said car prior to the seizure hereinafter referred to. On the third day after the arrival of said car at said Oklahoma City, and after the said B. W. Tucker had paid the freight thereon and taken possession thereof in manner and form hereinabove stated, and after 102 of said casks of beer had been removed therefrom by the said B. W. Tucker, the state of Oklahoma, acting through due process of law, seized the remaining 18 casks of said beer while still on the premises of the said Atchison, Topeka & Santa Fe Railway Company at said Oklahoma City, and before the same had been in any manner conveyed by the said B. W. Tucker from said railway company's depot and premises at said Oklahoma City to the said B. W. Tucker's residence, place of business, or place of storage, but whilst in his possession. The said B. W. Tucker was the owner of said 18 casks of beer at the time the same were so seized by the state of Oklahoma, and as such owner thereof he, the said B. W. Tucker, then and there intended to use the same in violation of the provisions of section 1, art. 3, of the enforcing act, same being chapter 69, p. 603, of the Session Laws of 1907-08 of the state of Oklahoma, by selling said beer to divers persons in said Oklahoma City. Under the facts

hereinabove stated, the state of Oklahoma as plaintiff herein claims the right to have said 18 casks of beer forfeited on the ground that at the time the same were seized in manner and form hereinabove stated the said B. W. Tucker, the owner and claimant herein, had said 18 casks of beer in his possession with the intention of violating the provisions of said enforcing act. On the contrary, the said B. W. Tucker, as claimant herein, contends that said 18 casks of beer cannot be adjudged forfeited under the provisions of said enforcing act for the reason that, at the time the same were seized in manner and form hereinabove stated, they were under the protection of the commerce clause of the Constitution of the United States, and that the police powers of the state of Oklahoma had not, under the provisions of the Wilson act (Act Aug. 8, 1890, c. 728, 26 Stat. 313 [U. S. Comp. St. 1901, p. 3177]) and the decisions of the Supreme Court of the United States, attached thereto, and that said police powers of the state of Oklahoma would not and could not attach to said 18 casks of beer until the same had been conveyed by claimant, the said B. W. Tucker, from the depot and premises of the said Atchison, Topeka & Santa Fe Railway Company at said Oklahoma City to the residence, place of business, or place of storage of the said B. W. Tucker in said Oklahoma City."

On June 7, 1909, judgment was rendered in favor of the claimant, B. W. Tucker, defendant in error, and the same is now properly here for review.

*Fred S. Caldwell,* for the State.

*O. L. Price,* for defendants in error.

WILLIAMS, J. (after stating the facts as above.) The question raised in this record is, the claimant, Tucker, having lawfully purchased intoxicating liquors in another state and caused the same to be transported into this state by an interstate shipment to himself as consignee, having the same in his possession on the carrier's premises, and with the intention of violating the prohibitory laws of this state, whether or not such liquors may be seized and confiscated under sections 5 and 6, art 3, of the enforcing act (Sess. Laws 1907-08, p. 605, c. 69), after the delivery thereof to the consignee by the carrier at the point of destination, but before such liquors have been by said consignee or his agent conveyed from the

carrier's depot or premises to the residence, place of business, or warehouse of the consignee.

In the case of *Schwedes v. State,* 23 Okla. 89, 1 Okla. Cr. 245, 99 Pac. 804, this court held that:

"Under subdivision 3, § 8, art. 1, of the Constitution of the United States, commonly referred to as the 'interstate commerce clause,' * * * a resident of one state has the right to have shipped to him from another state alcoholic liquors when ordered by him for his and his family's use, and to keep the same for such use, and the state cannot, under its police power, enact laws so as to substantially hamper or burden such constitutional right to have such shipment made and to receive and retain the same for personal use."

The cases of *Vance v. Vandercook Company,* 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100, and *Heymann v. Southern Ry. Co.,* 203 U. S. 270, 27 S. Ct. 104, 51 L. Ed. 178, were cited in support of that conclusion. In the case of *Pabst Brewing Company v. Crenshaw,* 198 U. S. 17, 25 Sup. Ct. 552, 49 L. Ed. 925, the court said, in referring to the case of *Vance v. Vandercook, supra.*

"The case turned upon the power of the consignee of liquors to receive them for his own use within the state of South Carolina, as well as the power to sell them in the original unbroken packages as imported to citizens of South Carolina. It was held, in substance, that the consignee had the constitutional right to receive them for his own use without regard to the state laws, but that under the Wilson act he could no longer assert a right to sell them in original packages in defiance of the state laws."

In the case of *Delamater v. South Dakota,* 205 U. S. 93, 27 S. Ct. 447, 51 L. Ed. 724, the court said:

"It having been thus settled that under the Wilson act a resident of one state had the right to contract for liquors in another state and receive the liquors in the state of his residence for his own use, therefore it is insisted the agent or traveling salesman of a nonresident dealer in intoxicating liquors had the right to go into South Dakota, and there carry on the business of soliciting from residents of that state orders for liquor to be consummated by acceptance of the proposals by the nonresident dealer. The premise is sound, but the error lies in the deduction, since it ignores the broad distinction between the want of power of a state to prevent

a resident from ordering from another state liquor for his own use
and the plenary authority of a state to forbid the carrying on
within its borders of the business of soliciting orders for intoxicat-
ing liquors situated in another state, even although such orders
may only contemplate a contract to result from final acceptance in
the state where the liquor is situated."

In the brief of the plaintiff in error the correctness of the con-
clusion reached in the Schwedes Case, which is incontrovertibly
supported by authorities, is not challenged, but it is insisted that
that case does not conclude the case at bar. In that case, this court
said:

"It is not essential for the decision of this case that we pass
upon the following questions: (1) After delivery has been made
by the carrier to the consignee, under the laws of Oklahoma, can
the state levy upon said goods on the charge that they have not
been *bona fide* brought into the state, and held by the consignee for
his personal use or that of his family? (2) Although such goods
may not be brought into the state for the personal use of the con-
signee or his family, but for the purpose of sale, which is prohib-
ited under the state law, can such consignee be prevented from
receiving and transmitting the same to his home, place of business,
or storage house? These questions are reserved."

It appears, however, that this question has been passed on by
the Criminal Court of Appeals in the cases of *High et al. v. State*
2 Okla. Cr. 161, 101 Pac. 115, and *McCord v. State*, 2 Okla. Cr.
214, 101 Pac. 280. And these cases are relied upon by the claim-
ant, Tucker, to sustain the judgment of the lower court. In the
case of *High v. State*, that court, after citing the cases of *Bowman
v. Chicago & N. W. R. R. Co.*, 125 U. S. 465, 8 Sup. Ct. 689, 1062,
31 L. Ed. 700, *Leisy v. Hardin*, 135 U. S. 100, 10 Sup. Ct. 681,
34 L. Ed. 128, *In re Rahrer*, 140 U. S. 545, 11 Sup. Ct. 865, 35
L. Ed. 572, *American Express Co. v. Iowa*, 196, U. S. 133, 25 Sup.
Ct. 182, 49 L. Ed. 417, *Adams Express Co. v. Iowa*, 196 U. S. 147,
25 Sup. Ct. 185; 49 L. Ed. 424, *Pabst Brewing Co. v. Crenshaw*,
198 U. S. 17, 25 Sup. Ct. 552, 42 L. Ed. 925, *Delamater v. South
Dakota*, 205 U. S. 93, 27 Sup. Ct. 447, 51 L. Ed. 724; and *Fop-*

*piano v. Speed,* 199 U. S. 501, 26 Sup. Ct. 138, 50 L. Ed. 288, said:

"The foregoing authorities settle the question that conveying an unbroken original package containing intoxicating liquors from the railroad depot to the home of the consignee is a part of the interstate commerce transportation; and in this case the interstate shipment was not completed until the same was delivered at the home of defendant Whittemore."

In the case of *McCord v. State, supra,* that court also said:

"We are constrained to hold that the jurisdiction of the state does not take effect until said shipments reach their destination at the home or place of storage of the consignee. Then, but not until then, can the state test the question of unlawful possession; and in this case the constructive possession of the defendant of the liquors in question was not a violation of any of the provisions of the prohibition law."

The cases of *Scott v. Donald,* 165 U. S. 58, 17 Sup. Ct. 265, 41 L. Ed. 632; *Vance v. W. A. Vandercook Co.,* 170 U. S. 438, 18 Sup. Ct. 674, 42 L. Ed. 1100; *Adams Express Co. v. Kentucky,* 206 U. S. 129, 27 Sup. Ct. 606, 51 L. Ed. 987; *Heymann v. Southern R. R. Co.,* 203 U. S. 270, 27 Sup. Ct. 104, 51 L. Ed. 178; *Schwedes v. State* 1 Okla. Cr. 245, 99 Pac. 804; *High et al. v. State, supra,* and *Hudson v. State,* 2 Okla. Cr. 176; 101 Pac. 275 are cited in support of the McCord Case. It therefore becomes necessary for us to examine and determine whether or not we will follow the rule announced by that court in the language above quoted.

In the case of *Bowman v. Chicago & Northwestern Railway Co., supra,* the court said:

"It may be said, however, that the right of the state to restrict or prohibit sales of intoxicating liquor within its limits conceded to exist as a part of its police power, implies the right to prohibit its importation, because the latter is necessary to the effectual exercise of the former. The argument is that a prohibition of the sale cannot be made effective except by preventing the introduction of the subject of the sale; that, if its entrance into the state is permitted, the traffic in it cannot be suppressed. But the right to prohibit sales, so far as conceded to the states, arises only after the act

of transportation has terminated, because the sales which the state may forbid are of things within its jurisdiction: Its power over them does not begin to operate until they are brought within the territorial limits which circumscribe it. It might be very convenient and useful in the execution of the policy of prohibition within the state to extend the powers of the state beyond its territorial limits. But such extra territorial powers cannot be assumed upon such an implication. On the contrary, the nature of the case contradicts their existence; for, if they belong to one state, they belong to all, and cannot be exercised severally and independently. The attempt would necessarily produce that conflict and confusion which it was the very purpose of the Constitution by its delegations of national power to prevent. It is easier to think that the right of importation from abroad and of transportation from one state to another includes, by necessary implication, the right of the importer to sell in unbroken packages at the place where the transit terminates; for the very purpose and motive of that branch of commerce which consists in transportation is that other and consequent act of commerce which consists in the sale and exchange, of the commodities transported. Such, indeed, was the point decided in the case of *Brown v. Maryland*, 25 U. S. (12 Wheat.) 419, 6 L. Ed. 678, as to foreign commerce, with the express statement, in the opinion of Chief Justice Marshall, that the conclusion would be the same in a case of commerce among the states. But it is not necessary now to express any opinion upon the point, because that question does not arise in the present case. The precise line which divides the transaction, so far as it belongs to foreign or interstate commerce, from the internal and domestic commerce of the state, we are not now called upon to delineate. It is enough to say that the power to regulate or forbid the sale of a commodity, after it has been brought into the state, does not carry with it the right and power to prevent its introduction by transportation from another state."

In the case of *Leisy v. Hardin, supra,* the question which had been reserved in the Bowman Case arose for determination, and it was held that the right to sell the imported package free from interference of state laws was protected by the Constitution of the United States. The court said (135 U. S. 124, 10 Sup. Ct. 689, 34 L. Ed. 128):

"The plaintiffs in error are citizens of Illinois, are not pharmacists, and have no permit, but import into Iowa beer which

they sell in original packages as described. Under our decision in *Bowman v. Chicago & N. W. R. Co., supra,* they had the right to import this beer into that state, and in the view which we have expressed they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time, we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizure, or any other action, in prohibition of importation and sale by the foreign nonresident importer."

In the case of *In re Rahrer, supra,* the court, in construing Act Cong.* Aug. 8, 1890, 26 Stat. 313, said:

"Congress did not use the terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed important property to fall at once upon arrival within the local jurisdiction."

In the case of *Scott v. Donald, supra,* the court said:

"It is sufficient for the present case to hold, as we do, that, when a state recognized the manufacture, sale, and use of intoxicating liquors as lawful, it cannot discriminate against the bringing of such articles in and importing them from other states; that such legislation is void as a hindrance to interstate commerce and an unjust preference of the products of the enacting state as against similar products of the other states."

The court further says:

"That law was not intended to confer upon any state the power to discriminate injuriously against the products of other states in articles whose manufacture and use are not forbidden, and which are therefore the subjects of legitimate commerce. When that law provided that 'all fermented, distilled, or intoxicating liquors transported into any state or territory, remaining therein for use, consumption, sale, or storage, therein, should, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and should not be exempt therefrom by reason of being introduced therein in original packages or otherwise,' evidently equality or uniformity of treatment under

state laws was intended. The question whether a given state law is a lawful exercise of the police power is still open, and must remain open, to this court. Such a law may forbid entirely the manufacture and sale of intoxicating liquors and be valid. Or it may provide equal regulations for the inspection and sale of all domestic and imported liquors, and be valid. But the state cannot under the congressional legislation referred to establish a system which, in effect, discriminates between interstate and domestic commerce in commodities to make and use and which are admitted to be lawful."

In the case of *Rhodes v. Iowa,* 170 U. S. 412, 18 Sup. Ct. 664, 42 L. Ed. 1088, the court said:

"The claim is, however, and it was upon this ground that the court below rested its judgment, that under and by virtue of the provisions of Act Cong. August 8, 1890, c. 728, 26 Stat. 313, the ruling in the Bowman Case is no longer apposite, as the effect of the act of Congress in question was to confer upon the state of Iowa the power to subject to its statutory regulations merchandise shipped from another state the moment it reached the line of the state of Iowa, and before the consummation of the contract of shipment by arrival at its destination and delivery there to the consignee. And it is to this question that the discussion at bar has mainly related, and upon which a decision of the cause really depends."

The court further said ( 170 U. S. 426, 18 Sup. Ct. 669, 42 L. Ed. 1088):

"We think that, interpreting the statute by the light of all its provisions, it was not intended to and did not cause the power of the state to attach to an interstate commerce shipment whilst the merchandise was in transit under such shipment, and until its arrival at the point of destination and delivery there to the consignee, and, of course, this conclusion renders it entirely unnecessary to consider whether, if the act of Congress had submitted the right to make interstate commerce shipments to state control, it would be repugnant to the Constitution."

In the case of *Vance v. W. A. Vandercook Co., supra,* the court said:

"The authority to purchase includes the right on the part of the buyer to determine from whom and where the purchase may be made. This gives the officers the opportunity, by ex-

ercising their right of purchase, to buy in one state to the detriment and exclusion of the products of every other state. As no other product, then, but that which the officers buy can be sold in the state, it follows that, although intoxicants will be freely offered for sale in the state, only liquors coming from the state in which the officer has purchased will be sold, and the products of all other states will be excluded from sale, and thereby discriminated against. And whether these consequences will arise will depend solely upon the arbitrary discretion of the state officers in determining where and from whom the liquor that they propose to offer for sale will be by them purchased. This, it is argued, demonstrates the inherent discrimination arising from legislation which makes state officers the sole persons authorized to buy and sell liquor—a discrimination whose unjust consequences can only be avoided by recognizing the right of the residents of all other states to ship their products into the state, and sell them in original packages. In the first place, to maintain this proposition, the presumption must be indulged in that the state officer in purchasing as provided by the state statute, instead of buying fairly and in the best markets, affording an equal chance to all sellers and to every locality, will, on the contrary, so act as to discriminate against the products of one or more states and in favor of those of others. Such a presumption would be equally justified in case the state law authorized only residents to be licensed to sell liquor and restricted the number of such licenses. The persons so licensed, whether one or one hundred, would buy where they pleased the liquor they proposed to sell, and it would therefore be fully as cogent to argue that they might elect to buy in one place instead of another, and thus discriminate against the persons or places from where or from whom they did not buy. The argument will not be strengthened, even if it be conceded that there is a difference between licensing a number of persons to buy or sell and concentrating the power to buy all the liquor to be sold in the hands of state officers, and by further conceding that whether the statute discriminates against producers of other states is to be determined solely by the power to bring about the discrimination which might arise from its execution, and not by whether the power has been so carried out as to cause an actual discrimination. Under these concessions, there would doubtless be force in the position taken, if the authority of the state officers to buy the liquor to be by them sold excluded the right of the residents of every other state

to ship to the residents of South Carolina liquor for their own use, for in that event the products of the state from which no liquor was bought by the state officers would be wholly excluded from the state, although by the state law liquor could be sold therein by the state agents. But the weight of the contention is overcome when it is considered that the interstate commerce clause of the Constitution guarantees the right to ship merchandise from one state into another, and protects it until the termination of the shipment by delivery at the place of consignment, and this right is wholly unaffected by the act of Congress which allows state authority to attach to the original package before sale, but only after delivery. *Scott v. Donald, supra; Rhodes v. Iowa, supra.* It follows that, under the Constitution of the United States, every resident of South Carolina is free to receive for his own use liquor from other states, and that the inhibitions of a state statute do not operate to prevent liquors from other states from being shipped into such state on the order of a resident for his use. This demonstrates the unsoundness of the contention that if state agents are the only ones authorized to buy liquor for sale in a state, and they select the liquor to be sold from particular states, the products of other states will be excluded. They cannot be excluded if they are free to come in for the use of any resident of South Carolina who may elect to order them for his use. The products of other states will be, of course, excluded from sale in the original packages in the state; but, as the right of the state to prevent the sale in original packages of intoxicants coming from other states in consequence of the state law forbidding the sale of any but certain liquor attaches to the original packages from other states by virtue of the act of Congress, the inability to make such sales arises from a lawful state enactment. To hold the law unconstitutional because it prevents such sale in the original package would be to decide that the state law was unconstitutional because it exerted a power which the state had a lawful right to exercise. Indeed, the law of the state here under review does not purport to forbid the shipment into the state from other states of intoxicating liquors for the use of a resident, and, if it did so, it would upon prinple and under the ruling in *Scott v. Donald* to that extent be in conflict with the Constitution of the United States. It is argued that the foregoing considerations are inapplicable since the state law, now before us, whilst it recognized the right of residents of other states to ship liquor into South Carolina for the use of resi-

dents therein, attaches to the exercise of that right such restric-
tions as virtually destroy it. But the right of persons in one
state to ship liquor into another state to a resident for his own
use is derived from the Constitution of the United States, and
does not rest on the grant of the state law. Either the conditions
attached by the state law unlawfully restrain the right or they
do not. If they do—and we shall hereafter examine this con-
tention—then they are void. If they do not, then there is no
lawful ground of complaint on the subject."

In the case of *Heymann v. Southern Ry. Co., supra.*, the
court said:

"As the general principle is that goods moving in interstate
commerce cease to be such commerce only after delivery and
sale in the original package, and as the settled rule is that the
Wilson law was not an abdication of the power of Congress to
regulate interstate commerce, since that law simply affects an
incident of such commerce by allowing the state power to attach
after delivery, and before sale, we are not concerned with whether
under the law of any particular state the liability of a railroad
company as carrier ceases and becomes that of a ware-
houseman on the goods reaching their ultimate destination be-
fore notice and before the expiration of a reasonable time for the
consignee to receive the goods from the carrier; for, whatever
may be the divergent legal rules in the several states concerning
the precise time when the liability of a carrier, as such, in respect
to the carriage of goods, ends, they cannot affect the general
principle as to when an interstate shipment ceases to be under
the protection of the commerce clause of the Constitution, and
thereby comes under the control of the state authority. Of course,
we are not called upon in this case, and do not decide, if the
goods of the character referred to in the Wilson act, moving in in-
terstate commerce, arrive at the point of destination, and, after
notice and full opportunity to receive them, are designedly left in
the hands of the carrier for an unreasonable time, that such con-
duct on the part of the consignee might not justify, if affirma-
tively alleged and proven, the holding that goods so dealt with
have come under the operation of the Wilson act, because con-
structively delivered. We say we are not called upon to consider
this question, for the reason that no facts are shown by the rec-
ord justifying passing on such a proposition. And, as in this
case we deal only with the power of the state to enforce its police
regulations against goods of the character of those enumerated

in the Wilson act, the subject of interstate commerce, before delivery, we must not be understood as in any way limiting or restricting the ruling made in *Vance v. W. A. Vandercook Co.,* *supra,* upholding the right of a citizen of one state to bring from another state into the state of his residence, and keep therein, for his personal use, the merchandise referred to in the Wilson act."

In the case of *Adams Express Co. v. Iowa, supra,* the rule announced in *American Express Co. v. Iowa. supra.* was followed.

As was held in the case of *Heymann v. Southern Railway Co.,* *supra,* the effect of the enactment of "the Wilson law was not an abdication of the power of Congress, since that law simply affects an incident of such commerce, by allowing the state power to attach after delivery, and before sale"; for, as was said in that case, the particular law of any state as to when "the liability of a railroad company as carrier ceases and becomes that of a warehouseman on the goods reaching their ultimate destination before notice and before the expiration of a reasonable time for the consignee to receive the goods from the carrier," cannot affect the general principle as to when an interstate shipment ceases to be under the protection of the commerce clause of the Constitution, and comes under the control of the state authority. It is clear that, when such interstate shipment is delivered, it is settled by the decisions of the Supreme Court of the United States that under the Wilson law, when an interstate shipment is delivered by the carrier to the consignee, the state law as to sales then and there attaches.

We assume for the purpose of this case that, when intoxicating liquors by a citizen of this state are contracted for in another state and caused to be shipped by interstate shipment from that state into this state to said party as consignee, under the rules announced in the cases of *Vance v. Vandercook, Pabst Brewing Co. v. Crenshaw, Heymann v. Southern Railway Co.,* and *Delamater v. South Dakota, supra,* after the same has been received by such consignee, he has the right to remove same to his home for his use. But when the consignee has had such liquors delivered to him by the carrier on the car-

rier's premises, then and there coming into the exclusive possession of the same, so far as to the bartering or selling of the same, the state law immediately attaches, although the same may not have been removed from such premises to the home, place of business or warehouse of the consignee. Would it be contended that the claimant, Tucker, could pay the freight on this car of beer, surrender his bill of lading, and have same delivered to him, then and there taking possession, and on the premises, without removing the casks of beer therefrom, sell the entire car of beer in bulk, or the casks separately, without subjecting himself to the pains and penalties of the state law against the barter or sale of intoxicating liquors? Then, why not the state law against any one having intoxicating liquors in his possession with the intention or purpose of selling or bartering same contrary to law also attach at the same time? The case of *Foppiano v. Speed, supra,* seems to answer this question. In that case Mr. Justice Peckham, in speaking for the court said:

"If the liquors kept for sale at the bar on the ferryboat had been consigned to the plaintiff in error from Arkansas, addressed to him at Memphis, although the plaintiff in error would have had *the right to a delivery of the liquors to him at the wharf in Memphis, yet, under the act of Congress, as construed by this court, the state could then at once have prohibited absolutely the sale thereof even in original packages.* Of course, if it could totally prohibit such sale, it would permit the *sale conditionally.* In this case there is no consignment to any one, but we do not see that the distinction is material. The liquors were owned by the plaintiff in error while on the boat, and carried along from port to port, and to be used on the boat as the demand at the bar made necessary. The thing which the plaintiff in error did was to sell the intoxicating liquors on this ferryboat when temporarily at the wharf in Memphis or within the boundaries of the state to persons then on the boat, and it was on account of these sales that he was compelled to take out a license and pay the tax therefor. Although there was no consignment of the liquor, yet it was in the possession of the plaintiff in error on the boat within the state the same as if he had received it therein on a consignment to him from outside the state, and had taken portions of it while in the state, sold it to different persons then

on the boat, and those persons had then and there taken and drank the liquor, and then and thus the transaction had been commenced and ended. The law provided no tax on any liquor in any way, but it made it necessary for the plaintiff in error to get a license for this sale of liquor within the state. There was no tax levied upon the boat or crew, nor upon any of the passengers, nor on any portion of the property of the company, nor on the freight carried by it on the boat. Neither the boat nor its officers nor crew were subjected to the payment of any fees for navigating the waters of the river. The Supreme Court of the state observed that the case did not show that the charter permitted the company to maintain a bar on board its boat, nor that the liquors sold in Tennessee came from any other state; and it may be stated here that there was no proof that the liquors were sold in original packages, but, as they were sold over the bar, there might, perhaps, be a presumption that they were not so sold. Without deciding the case on these grounds, the state court, interpreting the above-mentioned act of Congress, and believing that it was following the decisions of this court, held that, by virtue of that act, the state had the right to exact a license as a condition precedent to the exercise of the right on the part of the plaintiff in error to sell intoxicating liquors over the bar on board the boat while within the boundaries of the state of Tennessee. We think the Supreme Court was right in that view of the case."

If the state law against sales, including conditional sales, attached to the liquors as soon as delivered to the consignee at the wharf, it naturally follows that all laws reasonably within the scope of the police powers would also attach.

It was admitted by the claimant, Tucker, that he was the owner of the casks of beer at the time the same were seized by the state, and, as such owner having received the same from the interstate carrier then and there coming into the actual possession of the same on the carrier's premises, he was in possession of the said beer, intending to use the same in violation of the provisions of section 1, art. 3, of the enforcing act, the same being chapter 69 of the Session Laws of 1907-08, by selling said beer to divers persons. Section 1, art. 3, of the enforcing act (Sess. Laws 1907-08, p. 603), provides:

"It shall be unlawful for any person, individual or corporate, to manufacture, sell, barter, give away, or otherwise furnish except as in this act provided, any spirituous, vinous, fermented or malt liquors, or any imitation thereof or substitute therefor; or to manufacture, sell, barter, give away, or otherwise furnish any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contains as much as one-half of one per centum of alcohol, measured by volume, and which is capable of being used as a beverage, except preparations compounded by any licensed pharmacist, the sale of which would not subject him to the payment of special tax required by the laws of the United States; or to ship or in any way convey such liquor from one place within this state to another place therein except the conveyance of a lawful purchase as herein authorized; or to solicit the purchase or sale of any such liquors, either in person or by sign, circular, letter, card, price list, advertisement or otherwise, or to distribute, publish, or display any advertisement, sign or notice where any such liquor may be manufactured, bartered, sold, given away, or otherwise furnished, or to have the posses-sion of any such liquors, with the intention of violating any of the provisions of this act. A violation of any provisions of this section shall be a misdemeanor, and shall be punished by a fine of not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) and by imprisonment for not less than thirty days, nor more than six months; provided, however, that the provisions of this act shall not apply to the manufacture and sale of unfermented cider and wine made from apples, grapes, berries or other fruit grown in this state, and to the use of wine for sacramental purposes in religious bodies."

The question of the validity of that portion of section 1, art. 3, which makes it a misdemeanor to ship or in any way convey intoxicating liquors from one place in this state to another place therein except the conveyance of a lawful purchase, as therein authorized, is neither raised nor passed on herein; it not being essential to the determination of this case. If it were, however, the question would arise as to whether or not that provision under the rule laid down in the cases of *Scott v. McDonald* and *Vance v. W. A. Vandercook Co., supra,* interfered with interstate commerce, and violative of the rights of citizens of other states,

were it construed to include only purchases from the state or local agency and to exclude purchases made in another state and brought into this state by interstate shipments. But that part of said section which provides that it shall be unlawful for any person, individual or corporate, to have the possession of intoxicating liquors with the intention of selling, bartering, giving away, etc., under the admitted facts in this case, applies. Section 5, art. 3, of the enforcing act (Sess. Laws 1907-08, p. 605), provides that when liquors are being kept for the purpose of sale, barter, etc., contrary to law, that the same may be seized, and section 6, immediately following, provides that after hearing, if it shall be ascertained that such liquor shall have been so kept, it shall be forfeited to the state. There is no contention here by claimant that said provision is invalid or not reasonable within the scope of exercise of the police power, or that any of the statutes relating to the seizures and forfeitures are invalid or ineffective; the issue here being that the "18 casks of beer cannot be adjudged forfeited under the provisions of said enforcing act, for the reason that at the time the same were seized  *  *  *  they were under the protection of the commerce clause of the Constitution of the United States, and that the police powers of the state of Oklahoma had not, under the provisions of the Wilson act and the decisions of the Supreme Court of the United States, attached thereto, and that said police powers of the state of Oklahoma would not and could not attach to said 18 casks of beer until the same had been conveyed by the claimant  *  *  * from the depot and premises of the said  *  *  *  railway company  *  *  *  to the residence, place of business, or place of storage of the said B. W. Tucker in said Oklahoma City." Possession is defined in Webster's International Dictionary as follows:

"The having, holding, or detention of property in one's power or command; actual seizing or occupancy; ownership, whether rightful or wrongful. Possession may be either actual or constructive; actual, when a party has the immediate occu-

pancy; constructive, when he has only the right to such occupancy."

In this case the claimant admitted he was in the possession of such liquor with the intention of selling same contrary to the laws of the state. He had such possession as the immediate occupancy, the holding, and the detention of the property in his own power, constituting a consummation of the delivery of the shipment to the consignee. *Kenney Company v. Atlanta & West Point Railroad Co.*, 122 Ga. 365, 50 S. E. 132; *Stewart v. Central of Georgia Ry. Co.*, 3 Ga. App. 397, 60 S. E. 1; *Whitney Manufacturing Co. v. Railroad Co.*, 38 S. C. 365, 17 S. E. 147, 37 Am. St. Rep. 767; *Anchor Mill Co. v. Burlington, Cedar Rapids & Northern Railroad Co. et al.*, 102 Iowa. 262, 71 N. W. 255; *Goddard et al. v. The Tangier*, 21 Fed. Cas. 266 (No. 12,-267) 3 Ware, 110; *Richardson et al. v. Goddard et al.*, 64 U. S. (23 How.) 28, 16 L. Ed. 412. In this case, the claimant admitting that the possession of these casks of beer had passed from the railway company to himself, and it appearing under the rule laid down by the Supreme Court of the United States in the case of *Foppiano v. Speed, supra,* that, had said claimant sold the casks of said beer on the railway premises after acquiring such possession, he would have violated the state law, which then and there attached as soon as the carrier delivered the possession to the consignee, why can it be said that the state law against the bartering and selling of intoxicating liquors then and there attached, and yet that the state law against a person having in his possession liquors for the purpose or with the intention of barter and sale contrary to the law of the state did not also attach? It may be said under the Constitution of the United States the consignee had the right to order and receive said liquors and to transport the same to his home for his own use, and therefore to permit that provision of the state law to attach, making it a crime to have such liquors in his possession for the purpose or with the intention of sale and also providing for the forfeiting of the same to the state, would interfere with interstate commerce, and throw impediments in the way of citizens of this state order-

ing liquors from other states or foreign states, and receiving them here and taking them to their homes for personal use, or to their places of business to be used for mechanical or industrial purposes. But that argument was made and rejected by the Supreme Court of the United States in the original package cases after the amended act of Congress of August 8th, 1890, and would apply with equal force even after a man has taken an interstate shipment of liquors to his own home for personal use, if after he transported them to his home, he kept them there contrary to law, for the purpose of, or with the intention of, barter and sale; for then they would be subject to seizure. When the police arm of the state would seize these liquors in the home of the citizen, the answer would be that:

"Although I have them in my possession in my home for the purpose of barter and sale contrary to the laws of this state, yet, as the citizens of this state have the right under the federal Constitution to order such liquors from another state, or a foreign state, and to receive the same by interstate shipment, and transport them to their homes, and retain them there for their own use, you cannot be permitted to seize my liquors, though I am holding them in my home for the purpose and with the intention of sale or barter contrary to law, because it would interfere with interstate commerce."

Each contention is untenable. When actual possession passed from the carrier to the consignee, the consignee, accepting the 120 casks of beer and acknowledging possession, that constituted a delivery; and, when the delivery was consummated, the state laws attached.

Every man under the laws of this state is presumed to be innocent until his guilt is established by proper proof. All property is protected by such presumption, and the burden of proof is upon the party that would forfeit it. After the liquors are removed to one's home on the theory that same was ordered by the consignee from another state and received by him at the depot of the carrier, and also by him transported for the purpose and intention of being for his personal use, but afterwards he should change his intention and have them in his possession in his home

for sale, contrary to law, they would be subject to forfeiture. The burden would be upon the government, however, and the presumption would be in favor of the claimant, subject to the rebutted by proof. When the liquors are received at the depot by the consignee, if he then and there has the same in his possession with the intention of bartering or selling the same contrary to law, the same would under such circumstances be subject to forfeiture, the burden resting upon the state, with the presumption likewise in favor of the claimant, subject to be rebutted by proof.

Hence we conclude that the 18 casks of beer should have been forfeited to the state. The judgment of the lower court is reversed, and judgment will be here rendered forfeiting the same to the state.

Reversed and rendered.

All the Justices concur.